1  MATTHEW D. POWERS (S.B. #212682)
   mpowers@omm.com
2  O'MELVENY & MYERS LLP
   Two Embarcadero Center
3  28th Floor
   San Francisco, CA 94111
4  Telephone: (415) 984-8700
   Facsimile: (415) 984-8701
5
   *Attorneys for Defendant*
6  *Advanced Micro Devices, Inc.*

7                    **UNITED STATES DISTRICT COURT**

8                  **NORTHERN DISTRICT OF CALIFORNIA**

9                          **SAN JOSE DIVISION**

10

11 | JONATHAN DAY and MICHELLE DOBEK, | Case No. 5:22-cv-04305-BLF
   individually and on behalf of all others similarly
12 situated,                            | **DEFENDANT ADVANCED MICRO
                                         | DEVICES, INC.'S NOTICE OF MOTION
13               Plaintiffs,             | AND MOTION TO DISMISS;**

14       v.                             | **REQUEST FOR JUDICIAL NOTICE AND
                                         | INCORPORATION BY REFERENCE**
15 ADVANCED MICRO DEVICES, INC., a
   Delaware corporation,                | Hearing Date: January 19, 2023
16                                       | Time:  9:00 a.m.
                 Defendant.             | Judge:  Hon. Beth Labson Freeman
17                                       | Courtroom: Courtroom 3; 5th Floor

18                                       | Complaint Filed: July 26, 2022
                                         | FAC Filed: August 12, 2022
19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on January 19, 2023, at 9:00 a.m., or as soon thereafter as this matter may be heard by the Honorable Beth Labson Freeman, in Courtroom 3, 5th Floor of the above-entitled Court located at 280 South 1st Street, San Jose, California, 95113, Defendant Advanced Micro Devices, Inc. ("AMD") will, and hereby does, move the Court for an order dismissing with prejudice the First Amended Complaint ("FAC") of Plaintiffs Jonathan Day and Michelle Dobek ("Plaintiffs"), individually and on behalf of all others similarly situated, and each claim asserted therein against AMD.

AMD brings this Motion pursuant to Federal Rule of Civil Procedure 12(b)(1), 12(b)(6), and 9(b).  This Motion is based on this Notice of Motion and Motion, the following Memorandum of Points and Authorities, AMD's Request for Judicial Notice and Incorporation by Reference, the concurrently-filed Declaration of Matthew D. Powers and all exhibits thereto, and all pleadings, arguments, and any other matters presented to the Court at or before the hearing.

Dated:  September 29, 2022

O'MELVENY & MYERS LLP

By: _/s/ Matthew D. Powers_
Matthew D. Powers

Attorneys for Defendant
ADVANCED MICRO DEVICES, INC.

1

**TABLE OF CONTENTS**

2

**Page**

I.     INTRODUCTION ................................................................................................... 1

II.    BACKGROUND FACTS ....................................................................................... 3

       A.     Trusted Platform Modules, TPM 2.0, and Windows 11 .......................... 4

       B.     By Definition, "Discrete" Hardware TPMs Are *Not* Part of the CPU ................... 5

       C.     The Alleged "Stuttering" Defect Was Fixed Months Ago........................ 6

       D.     Alleged "Security" Issues ...................................................................... 7

       E.     Plaintiffs' Claims ................................................................................. 9

III.   LEGAL STANDARD............................................................................................. 9

IV.    ARGUMENTS ...................................................................................................... 10

       A.     "Stuttering" Claims Are Moot .............................................................. 10

       B.     The Vague "Security Vulnerability" Claims Fail to Allege a Concrete
              Injury..................................................................................................... 12

       C.     The ICFA and WVCCPA Claims Both Fail ........................................ 16

              1.     No showing of knowledge of any defect prior to purchase .................... 17

              2.     No actionable statements ......................................................... 17

              3.     No reliance ............................................................................. 19

       D.     The Negligence Claim Is Barred By The "Economic Loss" Rule ........................ 20

       E.     The Implied Warranty Claims All Fail ................................................ 20

       F.     Plaintiffs' Claim for Unjust Enrichment Must Be Dismissed.............................. 22

       G.     Plaintiffs Lack Standing to Sue for Unpurchased Athlon Products...................... 22

V.     CONCLUSION ..................................................................................................... 23

REQUEST FOR JUDICIAL NOTICE ........................................................................... 23

DEF.'S MOTION TO DISMISS;
REQUEST FOR JUDICIAL NOTICE
NO. 5:22-CV-04305-BLF

1

# TABLE OF AUTHORITIES

2

Page

3

<u>CASES</u>

*All W. Elecs. v. M-B-W,*
  64 Cal. App. 4th 717 (1998) ................................................................... 21

*Allen v. Conagra,*
  331 F.R.D. 641 (N.D. Cal. 2019) ........................................................... 19

*Appalachian Leasing v. Mack Trucks,*
  765 S.E.2d 223 (W. Va. 2014) ................................................................ 22

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ................................................................................ 10

*Astiana v. Hain,*
  783 F.3d 753 (9th Cir. 2015) .................................................................. 22

*Baird v. Samsung,*
  552 F. Supp. 3d 679 (N.D. Cal. 2021) ................................................... 19

*Balistreri v. Pacifica,*
  901 F.2d 696 (9th Cir. 1988) .................................................................. 10

*Bell v. Twombly,*
  550 U.S. 544 (2007) ................................................................................ 10

*Blissard v. FCA,*
  2018 WL 6177295 (C.D. Cal. Nov. 9, 2018) ......................................... 17

*Cahen v. Toyota,*
  717 F. App'x 720 (9th Cir. 2017) ..................................................... 3, 15

*Casden Builders v. Entre Prises USA,*
  2010 WL 2889496 (C.D. Cal. July 21, 2010) ........................................ 20

*Cheng v. BMW of N. Am.,*
  2013 WL 3940815 (C.D. Cal. July 26, 2013) ........................................ 11

*Clapper v. Amnesty Int'l USA,*
  568 U.S. 398 (2013) ................................................................................ 14

*Clemens v. DaimlerChrysler,*
  534 F.3d 1017 (9th Cir. 2008) ................................................................ 21

*Cnty. of L.A. v. Davis,*
  440 U.S. 625 (1979) ........................................................................ 10, 12

*Consumer Advocates v. Echostar,*
  113 Cal. App. 4th 1351 (2003) ............................................................... 18

*Datel Holdings v. Microsoft,*
  712 F. Supp. 2d 974 (N.D. Cal. 2010) ................................................... 24

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ii

**TABLE OF AUTHORITIES**
(continued)

Page

*E. Steel Constructors v. City of Salem*,
  549 S.E.2d 266 (W. Va. 2001) ............................................................. 22

*Elias v. Hewlett-Packard*,
  903 F. Supp. 2d 843 (N.D. Cal. 2012) ............................................. 3, 18

*Garcia v. Sony*,
  859 F. Supp. 2d 1056 (N.D. Cal. 2012) ........................................... 2, 19

*Glen Holly Ent., v. Tektronix*,
  343 F.3d 1000 (9th Cir. 2003) .............................................................. 18

*Granfield v. NVIDIA*,
  2012 WL 2847575 (N.D. Cal. July 11, 2012) ...................................... 22

*Hadley v. Chrysler Grp.*,
  2014 WL 988962 (E.D. Mich. Mar. 13, 2014) ............................... 11, 12

*Hauck v. AMD*,
  2018 WL 5729234 (N.D. Cal. Oct. 29, 2018) ...................................... 21

*Hauck v. AMD*,
  2019 WL 1493356 (N.D. Cal. Apr. 4, 2019) ................................... 14, 17

*Heater v. Gen. Motors*,
  568 F. Supp. 3d 626 (N.D. W. Va. 2021) ............................................ 20

*Heliotrope v. Ford*,
  189 F.3d 971 (9th Cir. 1999) ................................................................ 24

*Hovsepian v. Apple*,
  2009 WL 2591445 (N.D. Cal. Aug. 21, 2009) ..................................... 20

*In re Apple Processor Litig.*,
  366 F. Supp. 3d 1103 (N.D. Cal. 2019) ............................................... 15

*In re Apple*,
  2022 WL 2064975 (N.D. Cal. June 8, 2022) ............................. 14, 16, 18

*In re Apple*,
  366 F. Supp. 3d 1103 (N.D. Cal. 2019) ................................................. 3

*In re Cathode Ray Tube*,
  2013 WL 4505701 (N.D. Cal. Aug. 21, 2013) ..................................... 22

*In re Guess?*,
  174 F. Supp. 2d 1067 (C.D. Cal. 2001) ............................................... 24

*In re Intel*,
  2020 WL 1495304 (D. Or. Mar. 27, 2020) .......................................... 21

*In re Intel*,
  2021 WL 1198299 (D. Or. Mar. 29, 2021) ...................................... 3, 15

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*In re iPhone,*
  844 F. Supp. 2d 1040 (N.D. Cal. 2012) .......................................................... 3, 20

4

*In re MacBook Keyboard,*
  2019 WL 6465285 (N.D. Cal. Dec. 2, 2019) ................................. 1, 11, 12, 24

5

*In re Sorrento,*
  2021 WL 6062943 (S.D. Cal. Nov. 18, 2021) ................................................ 24, 25

6

7

*In re Van Wagoner,*
  382 F. Supp. 2d 1173 (N.D. Cal. 2004) ................................................................ 25

8

*In re Zappos.com,*
  888 F.3d 1020 (9th Cir. 2018) ............................................................................. 14

9

10

*Kearns v. Ford Motor Co.,*
  567 F.3d 1120 (9th Cir. 2009) ............................................................................. 16

11

*Khoja v. Orexigen,*
  899 F.3d 988 (9th Cir. 2018), *aff'd in part*, 805 F. App'x 525 (2020) ................... 23

12

13

*Krottner v. Starbucks Corp.,*
  628 F.3d 1139 (9th Cir. 2010) ............................................................................. 14

14

*Makaeff v. Trump Univ., LLC,*
  715 F.3d 254 (9th Cir. 2013) ............................................................................... 24

15

*Mandani v. Volkswagen,*
  2019 WL 652867 (N.D. Cal. Feb. 15, 2019) ........................................................ 17

16

17

*McGlinchy v. Shell,*
  845 F.2d 802 (9th Cir. 1988) ............................................................................... 10

18

*McKinney v. Google,*
  2011 WL 3862120 (N.D. Cal. Aug. 30, 2011) ..................................................... 18

19

20

*Midwestern Midget Football v. Riddell,*
  2016 WL 3406129 (S.D. W. Va. June 17, 2016) .................................................. 10

21

*No. 84 Emp.-Teamster Joint Council v. Am. W. Holding,*
  320 F.3d 920 (9th Cir. 2003) ............................................................................... 25

22

*O'Connor v. Ford,*
  567 F. Supp. 3d 915 (N.D. Ill. 2021) ................................................................... 22

23

24

*Oestricher v. Alienware,*
  544 F. Supp. 2d 964 (N.D. Cal. 2008) ................................................................. 18

25

*Peckerar v. Gen. Motors,*
  2020 WL 6115083 (C.D. Cal. Aug. 17, 2020) ........................................... 1, 11, 24

26

27

*Reniger v. Hyundai,*
  122 F. Supp. 3d 888 (N.D. Cal. 2015) ................................................................. 12

28

DEF.'S MOTION TO DISMISS;
REQUEST FOR JUDICIAL NOTICE
NO. 5:22-CV-04305-BLF

**TABLE OF AUTHORITIES**
(continued)

Page

*Rodriguez v. Ford*,
   2022 WL 972306 (N.D. Ill. Mar. 31, 2022) ................................................ 20

*Romero v. HP*,
   2017 WL 386237 (N.D. Cal. Jan. 27, 2017) ............................................... 23

*Siegal v. GEICO*,
   523 F. Supp. 3d 1032 (N. D. Ill. 2021) ...................................................... 10

*Smith v. McCullough*,
   270 U.S. 456 (1926) ....................................................................................... 9

*Spokeo v. Robins*,
   578 U.S. 330 (2016) ........................................................................ 2, 3, 12, 13

*Stock W. v. Confederated Tribes*,
   873 F.2d 1221 (9th Cir. 1989) ....................................................................... 9

*Swartz v. KPMG*,
   476 F.3d 756 (9th Cir. 2007) ....................................................................... 17

*Tasion Commc'ns v. Ubiquiti Networks*,
   2013 WL 4530470 (N.D. Cal. Aug. 26, 2013) ........................................... 20

*Tellabs, Inc. v. Makor*,
   551 U.S. 308 (2007) ..................................................................................... 23

*Tomek v. Apple*,
   2013 WL 3872774 (E.D. Cal. July 25, 2013), *aff'd*, 636 F. App'x 712 (9th Cir.
   2016) ............................................................................................................. 18

*Tosh-Surryhne v. Abbott Labs.*,
   2011 WL 4500880 (E.D. Cal. Sept. 27, 2011) ........................................... 11

*UMG Recordings v. Glob. Eagle*,
   117 F. Supp. 3d 1092 (C.D. Cal. 2015) ...................................................... 20

*United States v. Ritchie*,
   342 F.3d 903 (9th Cir. 2003) ....................................................................... 23

*Valley Fresh Produce v. W. Skyways*,
   2019 WL 4695668 (D. Colo. Sept. 25, 2019) ............................................. 18

*Van Zeeland v. Rand McNally*,
   532 F. Supp. 3d 557 (N.D. Ill. 2021) .......................................................... 22

*Vavak v. Abbott Labs.*,
   2011 WL 10550065 (C.D. Cal. June 17, 2011) ........................................... 11

*Vess v. Ciba–Geigy Corp.*,
   317 F.3d 1097 (9th Cir. 2003) ..................................................................... 16

**TABLE OF AUTHORITIES**
(continued)

Page

*Vitt v. Apple*,
469 F. App'x 605 (9th Cir. 2012) ........................................................................ 18

*Von Saher v. Norton Simon Museum of Art*,
592 F.3d 954 (9th Cir. 2010)............................................................................... 24

*Whitmore v. Arkansas*,
495 U.S. 149 (1990)............................................................................................ 14

*Williams v. Yamaha*,
51 F.3d 1015 (9th Cir. 2017)............................................................................... 17

*Wilson v. HP*,
668 F.3d 1136 (9th Cir. 2012)............................................................................. 17

*Yastrab v. Apple*,
173 F. Supp. 3d 972 (N.D. Cal. 2016) ............................................................ 2, 19

**STATUTES**

810 Ill. Comp. Stat. 5/2-314 ............................................................................ 9, 22

810 Ill. Comp. Stat. 5/2-316 ................................................................................ 22

815 ILCS 505/2 ................................................................................................... 17

W. Va. Code § 46-2-314 ................................................................................... 9, 22

W. Va. Code § 46-2-316 ...................................................................................... 22

W. Va. Code § 46A-6-102 ..................................................................................... 9

W. Va. Code § 46A-6-102(7)............................................................................... 17

**RULES**

Fed. R. Civ. P. 12(b)(1).......................................................................................... 9

Fed. R. Civ. P. 12(b)(6)........................................................................................ 10

Fed. R. Civ. P. 9(b) ................................................................................. 10, 16, 20

Fed. R. Evid. 201(b).............................................................................................. 23

Fed. R. Evid. 201(d).............................................................................................. 23

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.     INTRODUCTION**

3        All of the claims in this putative consumer class action are fundamentally flawed and

4   should be dismissed with prejudice.  In their FAC, Plaintiffs contend that the AMD Ryzen central

5   processing unit ("CPU") chips that they bought are "defective" because they include a security

6   feature known as a "firmware Trusted Platform Module," or "fTPM."  But as set forth below, in

7   the FAC Plaintiffs fundamentally misapprehend and misrepresent the technology at issue and

8   ignore public (and judicially noticeable) facts that are fatal to all of their claims.

9        ***First***, while Plaintiffs allege that AMD's use of fTPM can cause "stuttering" during video

10  playback, they inexplicably fail to mention that AMD has already released free firmware updates

11  that *completely* resolve the stuttering issue.  *See, e.g.*, Ex. 1,[1] *AMD's Bugfix For Ryzen Stuttering*

12  *Now Widely Available*, June 14, 2022, Tom's Hardware.  Plaintiffs' claims over an already

13  resolved "bug" are moot—and Plaintiffs should not be permitted to avoid dismissal by "pleading

14  around" an obvious and freely available fix that resolves that "bug" completely.  *See, e.g.*,

15  *Peckerar v. Gen. Motors*, 2020 WL 6115083, at *1 n.1 (C.D. Cal. Aug. 17, 2020) (taking notice

16  of defendant's recall report to reject claims over alleged car defects); *In re MacBook Keyboard*,

17  2019 WL 6465285, at *2 (N.D. Cal. Dec. 2, 2019) (taking notice of defendant's Keyboard

18  Service Program to dismiss claims over "defective" keyboards).

19       ***Second***, Plaintiffs have artfully pled their claims so as to insinuate (without actually

20  specifically pleading) that AMD's fTPM is incompatible with Windows 11.  FAC ¶¶ 13, 16, 142,

21  144.  Plaintiffs cannot truthfully plead such facts because, as Microsoft itself has made clear,

22  fTPMs are a perfectly valid implementation of the TPM 2.0 standard that Windows 11 requires.

23  Ex. 15 at 5, *TPM Recommendations*, July 12, 2022, Microsoft ("Microsoft does not take a

24  position on which way a TPM should be implemented and there is a wide ecosystem of available

25  TPM solutions, which should suit all needs.").  And even if Plaintiffs *had* pled that AMD's chips

26

27  [1] All evidentiary citations are to the Declaration of Matthew D. Powers.  All exhibits are subject

28  to judicial notice as detailed herein and in the concurrently-filed Request for Judicial Notice.

DEF.'S MOTION TO DISMISS;
REQUEST FOR JUDICIAL NOTICE
NO. 5:22-CV-04305-BLF

were incompatible with Windows 11's new requirements (again, Plaintiffs have not done so) those claims would still fail.  Here, Plaintiffs allege that they bought their CPU chips in 2019 and 2020—a year or more before Microsoft released Windows 11.  FAC ¶¶ 28–29, 109.  Plaintiffs do not contend that they saw or relied on any statement by AMD that its chips were compatible with Windows 11 at the time they made their purchases—and absent such an allegation, any assertion that AMD is responsible for ensuring *future* compatibility with new software releases by a different company (Microsoft) should be rejected out of hand.  *See, e.g.*, *Yastrab v. Apple*, 173 F. Supp. 3d 972, 979–80 (N.D. Cal. 2016) (rejecting claims based on alleged incompatibility of phone feature with new software update); *Garcia v. Sony*, 859 F. Supp. 2d 1056, 1064 (N.D. Cal. 2012) (rejecting claim "that all such branded games [for Playstation consoles] must be compatible with all PS3 models in perpetuity, or at least for some unspecified number of years").  Further, Microsoft's TPM 2.0 requirement simply requires that the end device (e.g., phone, laptop, or PC) have a TPM, meaning it applies to *device* manufacturers, not *processor* manufacturers.  *See* Ex. 17, *Windows 11 Minimum Hardware Requirements*, June 2021, Microsoft at 12.

   **Third**, there appears to be a fundamental contradiction (and flaw) inherent in all of Plaintiffs' claims.  Specifically, their contention that customers should have been provided with discrete "hardware" TPMs that are "separate" from and "stand apart from the CPU" chip (e.g., FAC ¶¶ 138–44) is illogical and incoherent because that type of "discrete" or "separate" TPM by definition would be *separate* from the CPU chip and thus provided by a *different* company.  In other words, a claim that a CPU is "defective" because it does not include a "separate" TPM chip makes no sense; AMD sells CPUs, not motherboards or assembled computers—a claim that AMD "failed" to provide a *separate* hardware TPM chip would be like buying a car and then complaining to the supplier that made the car's engine about a "defect" with the locks on the car's doors.  All of Plaintiffs' claims must be dismissed because this purported "failure" is not an injury traceable to the conduct of AMD (if even an injury at all).  *Spokeo v. Robins*, 578 U.S. 330, 338 (2016) (injury in fact must be "fairly traceable to the challenged conduct of the defendant").

   **Fourth**, to the extent Plaintiffs' claims are based on contentions about vague "security risks," those claims all fail because Plaintiffs have not pled the kind of "concrete" injury such

DEF.'S MOTION TO DISMISS;
REQUEST FOR JUDICIAL NOTICE
NO. 5:22-CV-04305-BLF

claims require.  As the Supreme Court made clear in *Spokeo*, 578 U.S. at 340, simply alleging some kind of cybersecurity "risk" is inadequate—particularly where, as here, the Plaintiffs do not contend that any of their personal information was breached.  *See also, e.g.*, *In re iPhone*, 844 F. Supp. 2d 1040, 1064 (N.D. Cal. 2012) (alleged "increased, unexpected, and unreasonable risk to the security of sensitive personal information" was "too speculative to support a claim for negligence under California law"); *Cahen v. Toyota*, 717 F. App'x 720, 723 (9th Cir. 2017) (no injury from risk of hacking); *In re Apple*, 366 F. Supp. 3d 1103, 1110 (N.D. Cal. 2019) (no showing that security vulnerabilities posed an immediate risk to devices).  In addition, most of the "risks" cited in the FAC have nothing to do with AMD's CPUs or the fTPM feature they claim is "defective"—and those that do deal with AMD present no real risk of harm.

No computer system is fully secure in this modern era—and as multiple courts have held, the "failure" to disclose a general background risk of cybersecurity threats is not "fraudulent" or otherwise actionable as a matter of law.  *See, e.g.*, *In re Intel*, 2021 WL 1198299, at *7 (D. Or. Mar. 29, 2021) (security flaw "known in the industry" was not a material omission absent concealment); *Cahen*, 717 F. App'x at 723 (no injury due to a risk of hacking); *Apple*, 366 F. Supp. 3d at 1110 (no facts to show security vulnerabilities posed an immediate risk to their devices and diminish their value).  That is especially true here, where Plaintiffs do not contend that they saw or relied on any specific statement by AMD about security that was "false."  Nor can they—the handful of statements about "security" (e.g., "multi-layered approach to security") discussed in the FAC (which, again, Plaintiffs do not contend they personally relied on) are the kinds of classic, non-actionable statements about products that courts have repeatedly rejected. *See, e.g.*, *Elias v. Hewlett-Packard*, 903 F. Supp. 2d 843, 854–55 (N.D. Cal. 2012).

For all these reasons and additional claim-specific reasons described in detail below, each of Plaintiffs' claims fail and should be rejected on the pleadings.

## II.   BACKGROUND FACTS

As set out below, Plaintiffs have failed to include critical information in their FAC and have artfully pled their claims so as to create impressions that are contrary to judicially noticeable facts—including that the "stuttering" they complain of was fixed months ago.

DEF.'S MOTION TO DISMISS;
REQUEST FOR JUDICIAL NOTICE
NO. 5:22-CV-04305-BLF

### A.     Trusted Platform Modules, TPM 2.0, and Windows 11

Plaintiffs' claims all revolve around a feature of modern computers known as a Trusted Platform Module, or "TPM."  In general terms, a TPM chip is a feature that helps increase security by keeping passwords and similar information in a discrete encrypted system. Specifically, a TPM operates as a secure crypto-processor that is designed to provide security and privacy benefits by generating, storing, and limiting the use of cryptographic keys.  Ex. 16, Trusted Platform Module 2.0; FAC ¶ 49.  There have been many iterations of TPM technology over the years, and in 2014, the Trusted Computing Group ("TCG"), a nonprofit organization that develops industry-wide standards for trusted computing platforms, released specifications for a then-new "TPM 2.0" standard.  Ex. 10, *TCG Releases TPM 2.0 Specification for Improved Security*, Apr. 1, 2014, TCG; Ex. 15.  This standard, referenced throughout the FAC, updated previous TPM specifications to "offer the flexibility for industry implementations across a broad range of platforms including servers, desktops, embedded systems, mobile devices, and network equipment."  Ex. 10 at 4.  And as Plaintiffs correctly note, in September 2021, Microsoft announced it would require TPM 2.0 to run Windows 11.  FAC ¶ 106.  The rest of the FAC, unfortunately, is pled so as to create inaccurate impressions about both Windows 11 and the TPM 2.0 standard.  Specifically, Plaintiffs appear to assert that (1) the TPM 2.0 standard requires a "discrete" or "hardware" TPM chip separate from the CPU and (2) firmware TPMs like AMD's fTPM are not compatible with Windows 11.  *E.g.*, FAC ¶¶ 13 ("defeat device for Microsoft's new TPM requirement"), 142 ("Potemkin" TPM), 144 ("not a TPM at all").  Neither is true.  Plaintiffs do not and cannot plead those "impressions" as *facts*, because judicially noticeable materials (including from Microsoft) make clear that those "impressions" are patently false.

First, the TPM 2.0 standard requires a TPM, but is agnostic as to what *kind* of TPM is used.  Instead, the requirements describe five different types of TPMs that meet the standard, **including fTPMs**.  Ex. 9, *TPM 2.0: A Brief Introduction* (June 2019), *referenced at* FAC ¶ 61. Plaintiffs never plead that TPM 2.0 requires a discrete TPM because they cannot do so.

Second, Microsoft likewise does *not* require a discrete TPM to run Windows 11.  On the contrary, Microsoft's website makes clear that firmware TPMs *do* satisfy Windows 11's TPM

1   requirements.  Ex. 15 at 4 ("While TPM 1.2 parts are discrete silicon components, which are

2   typically soldered on the motherboard, TPM 2.0 is available as a discrete (dTPM) silicon

3   component in a single semiconductor package … *and as a firmware (fTPM)* based component

4   running in a trusted execution environment (TEE) … ."), and at 5.  As Microsoft explains,

5   "Windows uses any compatible TPM in the same way" and "*Microsoft does not take a position*

6   *on which way a TPM should be implemented* .…"  *Id.* at 5.  Plaintiffs attempt to create the false

7   impression that firmware TPMs are somehow incompatible with either the TPM 2.0 standard or

8   Microsoft's specifications for Windows 11 should be rejected.

9        Third, Microsoft's TPM 2.0 standard is not even imposed on *processor* manufacturers like

10   AMD, but rather, is imposed on *device* manufacturers (e.g., phone, tablet, laptop, and PC

11   manufacturers).  Ex. 17 at 13, ("[a]ll *device* models, lines or series").  Microsoft's TPM 2.0

12   requirement is thus imposed on overall devices, not components like CPU chips.

13        **B.      By Definition, "Discrete" Hardware TPMs Are *Not* Part of the CPU**

14        Throughout the FAC, Plaintiffs attempt to cast AMD's use of a firmware TPM as a

15   "defect," and insist that AMD should have instead implemented the "gold-standard" of TPM—a

16   discrete TPM.  Setting aside the relative merits of these different TPM types, there is one glaring

17   problem with Plaintiffs' position: by Plaintiffs' own admission, a discrete TPM is implemented

18   by installing a *different* chip on a system's motherboard that is *completely separate* from the

19   processors AMD sells.  FAC ¶¶ 58 ("One of the principal security features of the TPM standard is

20   that it was generally implemented as part of *a separate hardware system* on a computer's

21   motherboard."), 59 ("A discrete hardware TPM mean[s] that cryptographic keys used by a system

22   [a]re stored in a *physically separate subsystem* – away from the system's main processor and

23   memory systems."), 67 ("hardware TPM *is not part of the CPU*") (emphases added).  AMD does

24   not manufacture motherboards and cannot control whether manufacturers or end users building

25   their own machines install hardware TPM modules—that is a decision for the motherboard

26   manufacturer or computer builder.  *See* Ex. 11, *What is TPM and why isn't mine working?*, Oct.

27   11, 2017, PCWorld.  In other words, any contention that AMD should have implemented a

28   discrete TPM is nonsensical—that type of TPM is *by definition* separate from AMD's CPUs.

DEF.'S MOTION TO DISMISS;
REQUEST FOR JUDICIAL NOTICE
NO. 5:22-CV-04305-BLF

1

**C.      The Alleged "Stuttering" Defect Was Fixed Months Ago**

2          In the FAC, Plaintiffs claim that their AMD Ryzen processors, when integrated into their

3    PCs, caused "stuttering" during gameplay, videoconferencing, and media playback.  FAC ¶ 5.

4    The FAC provides few details on the Plaintiffs' alleged personal experiences with stuttering (*see*

5    *id.* ¶¶ 28–29), but the materials cited in the FAC make clear that the stuttering issue was generally

6    very minor, occurring "quite rarely"—i.e., "maybe 3 or 4 times per day."[2]  But there is also a

7    more fundamental problem with Plaintiffs' stuttering allegations—while the FAC briefly notes

8    AMD's March 8, 2022 announcement that a solution would be forthcoming, it fails to mention

9    that AMD ***has already provided that solution for free***.  *See* FAC ¶¶ 163–167; Ex. 2 at 3, *AMD*

10   *BIOS Updates Arrive To Resolve Ryzen TPM Stuttering Issue In Windows*, June 13, 2022,

11   HotHardware ("AMD's come out and said that it has shipped fixed firmware along with AGESA

12   version 1.2.0.7 to the motherboard manufacturers.  Essentially, it's in their hands now."); Ex. 3 at

13   2–3, *The Ryzen TPM Stuttering Bug is Finally Fixed on Windows 11*, June 14, 2022, Digitaltrends

14   ("AMD and its motherboard partners are rolling out BIOS updates that completely patch the

15   [stuttering] bug."); Ex. 4, *Have an AMD PC? Update Your BIOS to Nix Some Stuttering Issues*,

16   June 13, 2022, PC Gamer; Ex. 5 *AMD Fixes Performance and Stuttering Issues in Gaming*

17   *Related to fTPM on Windows 10/11*, June 15, 2022, HardwareTimes.  AMD's warranty webpage

18   directs users like Plaintiffs to check for the latest firmware updates (also known as "BIOS"

19   updates[3]) and provides links to the five main motherboard manufacturers' websites where they

20   _____

21   [2] *See* Ex. 21 at 3, Youtube (Jan. 29, 2022), *cited and quoted at* FAC ¶ 151 ("[Stuttering] happens

22   for about 3 or 4 times a day and doesn't seem to be affecting performance or anything else"); Ex.

23   18 at 11, AMD Customer Forum (Feb. 2022), *cited at* FAC ¶ 160 ("I'm on my PC for up to 16

24   hours a day and I would see the stutter like maybe 3 or 4 times per day").

25   [3] The BIOS or Basic Input/Output System contains settings for running RAM and the processor

26   and functions as the link between a user's hardware and operating system (e.g., Windows).

27   Having the latest BIOS is essential to ensuring optimal PC performance and stability.  Updating

28   the BIOS is simple; a user need only visit the support page for their motherboard with links to

6

can do so.  Ex. 7, Warranty Service: Retail CPUs Purchased New in Box.  Put simply, Plaintiffs

can resolve the alleged stuttering issue with a quick, easy, and free BIOS update, yet nothing in

the FAC suggests that Plaintiffs ever even attempted to update their BIOS, much less that this

"fix" was somehow ineffective.

### D.    Alleged "Security" Issues

In the FAC, Plaintiffs also allege that AMD's use of fTPM raises vague "security

vulnerabilities" not applicable to other types of TPMs.  Plaintiffs' allegations in this vein fall into

three categories: (1) vague allegations about the existence of firmware attacks, untethered to

AMD or its processors, (2) allegations about purported security issues specific to AMD

processors that have already been solved, and (3) generic assertions about the *potential* for

firmware attacks on AMD's processors that are untethered to any particular risk.

First, many of the allegations and cited materials are not specific or relevant to AMD,

AMD's CPUs, or even CPUs generally:

- Paragraphs 81-88 just explain the origin of firmware attacks generally.

- Paragraphs 89-92 refer to a 2018 article a hacking group tampering with a Unified

    Extensible Firmware Interface ("UEFI") firmware.  Ex. 20, *Fancy Bear LoJax Campaign*

    *Reveals First Documented Use of REFI Rootkit in the Wild*, Sept. 27, 2018, ZDNet,

    *referenced at* FAC ¶¶ 90–91.  UEFI firmware is embedded on a PC's motherboard, and is

    distinct from AMD's processor or its fTPM.  Ex. 26 at 2, *Unified Extensible Firmware*

    *Interface (UEFI)*, May 2021, TechTarget ("UEFI functions via special firmware installed

    on a computer's motherboard ... .")

- Paragraphs 93-96 refer to another article for the proposition that firmware attacks

    "facilitated access to what is typically a read-only part of the operating system's

    memory."  FAC ¶ 96; Ex. 19, *Thunderbolt Flaw Affect Millions of Computers – Even*

    *Locking Unattended Devices Won't Help*, May 11, 2020, ZDNet, *referenced at* FAC

    ¶¶ 93, 95.  But this alleged vulnerability is specific to Thunderbolt ports, a feature nearly

---

download BIOS updates.  *See* Ex. 8, How to Update Motherboard BIOS, AMD.com

DEF.'S MOTION TO DISMISS;
REQUEST FOR JUDICIAL NOTICE
NO. 5:22-CV-04305-BLF

1    exclusive to Apple that, again, has nothing to do with AMD.  Ex. 27, *Thunderbolt Port:*

2    *Everything You Should Know [Updated in 2022]*, Aug. 2, 2022, iBoysoft.

3    • Paragraphs 97-98 cite a U.S. Department of Transportation report discussing *automotive*

4    *software* that has nothing to do with any AMD CPUs.  Ex. 23, U.S. Department of

5    Transportation (Oct. 2020), *cited at* FAC ¶ 97.

6    Second, Plaintiffs cite three security issues specific to AMD's CPUs, but these either have

7    nothing to do with fTPM, have already been patched, or are highly unlikely to result in harm:

8    • In paragraph 129, Plaintiffs describe a flaw in the PSP discovered in 2019, but the paper

9    Plaintiffs reference had nothing to do with fTPM (the words "firmware" or "TPM" do not

10   appear at all).  Ex. 29, *Moritz Lipp, et al.*, *Take A Way: Exploring the Security*

11   *Implications of AMD's Cache Way Predictors* (Oct. 2020).  Instead, the study concerned

12   potential side-channel attacks which the researchers acknowledged were theoretical and

13   relatively minor.  Ex. 30, *Researchers Develop New Side Channel Attacks on AMD Chips*,

14   Mar. 9, 2020, TechTarget.com ("[S]everal of the researchers said via social media that the

15   side channel attacks are not a [*sic*] severe as Meltdown and Spectre.").

16   • In paragraph 130, Plaintiffs reference a vulnerability in AMD's PSP identified in 2021

17   that was related to a driver, not the fTPM, and AMD promptly provided a patch.  Ex. 31,

18   *The AMD PSP Flaw Provides Access To Uninitialized Memory*, Dec. 6, 2021, Medium

19   ("All that is needed is to apply a patch which should resolve the problem."), Ex. 24, AMD

20   Chipset Driver Information Disclosure Vulnerability, AMD.com.

21   • In paragraph 128, Plaintiffs contend that in 2017 (before any BIOS updates addressing

22   AMD's fTPM were rolled out), security researchers discovered a potential vulnerability in

23   AMD's PSP specifically within its fTPM implementation.  But this test was done with an

24   ARM emulator, rather than "any actual AMD hardware," the attack would require

25   *physical* access to the device, and the researchers did not identify any instances wherein

26   this alleged vulnerability was actually exploited.  Ex. 32, *AMD-PSP: fTPM Remote Code*

27   *Execution via crafted EK certificate*, Jan. 3, 2018, SECLists.org.

28   As to each of these three instances, Plaintiffs do *not* contend in the FAC that these

1    "vulnerabilities" are still a threat to them or any other AMD user.

2         Third, and critically, nowhere in the FAC do Plaintiffs plead that any purported security

3    vulnerability in their AMD CPUs (or any other AMD CPUs) has actually been exploited.  Nor do

4    they contend that their systems or data are at risk to any specific exploit.  Instead, their "security"

5    claims are based on the idea that AMD's firmware-based TPM means (according to Plaintiffs)

6    AMD's systems are "vulnerable to firmware attacks" as a general matter.  FAC ¶ 210.

7         **E.    Plaintiffs' Claims**

8         Plaintiffs filed the original complaint in the Day Action on July 26, 2022 (ECF No. 11),

9    and on August 12, 2022, filed a FAC.  ECF No. 13.  The named Plaintiffs are Jonathan Day, a

10   West Virginia resident who allegedly purchased an AMD Ryzen 7 processor from Amazon.com

11   in 2020, and Michelle Dobek, an Illinois resident who allegedly purchased a Ryzen 9 processor

12   from Micro Center Computer & Electronics in 2019.  FAC ¶¶ 28–29.  Plaintiffs allege that the

13   use of fTPM in AMD Ryzen and Athlon processors (the latter of which neither Plaintiff bought)

14   caused "stuttering" in media playback, video conferencing, and/or gameplay, and that their chips

15   are subject to the vague security "risks" set out above.  Based on those allegations, Plaintiffs

16   assert claims on behalf of a putative nationwide class for (1) negligence, (2) unjust

17   enrichment/quasi-contract, and (3) breach of implied warranty; two claims on behalf of an Illinois

18   subclass for (4) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act,

19   and (5) breach of implied warranty of merchantability, 810 Ill. Comp. Stat. 5/2-314; and the

20   remaining two claims on behalf of a West Virginia subclass for (6) breach of implied warranty of

21   merchantability, W. Va. Code § 46-2-314, and (7) violation of W. Va. Code § 46A-6-102.

22   **III.   LEGAL STANDARD**

23        Dismissal is appropriate when Plaintiffs lack subject matter jurisdiction.  Fed. R. Civ. P.

24   12(b)(1).  When a motion is made pursuant to Fed. R. Civ. P. 12(b)(1), Plaintiffs have "the burden

25   of proving jurisdiction in order to survive the motion," *Stock W. v. Confederated Tribes*, 873 F.2d

26   1221, 1225 (9th Cir. 1989), and the FAC should be dismissed if Plaintiffs fail to show in their

27   pleading "affirmatively and distinctly, the existence of whatever is essential to federal

28   jurisdiction."  *Smith v. McCullough*, 270 U.S. 456, 459 (1926).  Next, dismissal under Rule

9

1    12(b)(6) is appropriate where there is either a "lack of a cognizable legal theory or the absence of

2    sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica*, 901 F.2d 696, 699

3    (9th Cir. 1988).  The FAC must be dismissed if it does not "contain sufficient factual matter,

4    accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

5    U.S. 662, 678 (2009) (quoting *Bell v. Twombly*, 550 U.S. 544, 570 (2007)).  And while the Court

6    must accept well-pleaded facts as true, the Court need not assume the truth of legal conclusions.

7    *Iqbal*, 556 U.S. at 677–79.  "[C]onclusory allegations without more are insufficient to defeat a

8    motion to dismiss for failure to state a claim." *McGlinchy v. Shell*, 845 F.2d 802, 810 (9th Cir.

9    1988).  And, finally, Plaintiffs' fraud-based Illinois and West Virginia state law claims must meet

10   the heightened pleading standard of Rule 9(b), which requires Plaintiffs to "state with

11   particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b); *see also*

12   *Siegal v. GEICO*, 523 F. Supp. 3d 1032, 1041 (N. D. Ill. 2021); *Midwestern Midget Football v.*

13   *Riddell*, 2016 WL 3406129, at *3 (S.D. W. Va. June 17, 2016).

14   **IV.    ARGUMENTS**

15          **A.    "Stuttering" Claims Are Moot**

16          To the extent they are based on alleged "stuttering" during video playback, every one of

17   Plaintiffs' claims is moot in light of the BIOS updates AMD has released, which remedies any

18   alleged stuttering.  *See supra* Part II.C; *see also Cnty. of L.A. v. Davis*, 440 U.S. 625, 631 (1979)

19   ("A case is moot when the issues presented are no longer 'live' or the parties lack a legally

20   cognizable interest in the outcome.").  A case is moot when "(1) it can be said with assurance that

21   'there is no reasonable expectation ...' that the alleged violation will recur, and (2) interim relief

22   or events have completely and irrevocably eradicated the effects of the alleged violation." *Davis*,

23   440 U.S. at 631 (internal citations omitted).

24          Here, both elements have been met—there is no reasonable expectation that the alleged

25   stuttering will recur and the effects of the alleged stuttering have been "eradicated" because the

26   BIOS updates AMD released as of June 2022 fix the stuttering issue Plaintiffs claim they

27   experienced.  *See supra* Part II.C.  That fix is available for free from all major motherboard

28   manufacturers.  *See supra* Part II.C.  Indeed, courts in similar circumstances have routinely

DEF.'S MOTION TO DISMISS;
REQUEST FOR JUDICIAL NOTICE
NO. 5:22-CV-04305-BLF

dismissed claims on mootness grounds. For example, in *Hadley v. Chrysler Grp.*, plaintiffs brought a class action against a car manufacturer over an alleged airbag defect. 2014 WL 988962, at *1 (E.D. Mich. Mar. 13, 2014). The court granted defendant's motion to dismiss on mootness grounds because, at the time the complaint was filed, defendant had already offered a free, immediately available repair for the defect and the complaint contained no allegations that the repair would not cure the defect. *Id.* at *5–7. Other courts have reached the same result where a defendant offered to fully resolve the alleged defect through repair, refund, or recall. *See, e.g., Tosh-Surryhne v. Abbott Labs.*, 2011 WL 4500880, at *5 (E.D. Cal. Sept. 27, 2011) (defendant's full refund offer effectively mooted plaintiffs' claims); *Vavak v. Abbott Labs.*, 2011 WL 10550065, at *3 (C.D. Cal. June 17, 2011) (dismissing restitution claims as moot in light of defendant's pre-complaint offer of a full refund for tainted baby formula); *Cheng v. BMW of N. Am.*, 2013 WL 3940815, at *1–2, *4 (C.D. Cal. July 26, 2013) (dismissing claims on mootness grounds where there was an effective recall program in place that offered plaintiff "precisely the relief [] he seeks"). And the fact that Plaintiffs chose not to mention the free BIOS update in their FAC is of no moment—courts routinely take judicial notice of the existence of warranty and refund policies or available repairs that are key in considering the mootness of plaintiffs' claims. *See, e.g., Vavak*, 2011 WL 10550065, at *3 (taking judicial notice of defendant's offer of a full refund); *MacBook Keyboard*, 2019 WL 6465285, at *2 (taking judicial notice of defendant's webpage describing their keyboard service program, the fact that these representations were made publicly, and the fact that defendant was providing free repair services to customers); *Peckerar*, 2020 WL 6115083, at *1 n.1 (taking judicial notice of defendant's recall report and a special coverage report to support the fact that defendant had a safety recall in place to address plaintiffs' alleged car defects). Accordingly, Plaintiffs' claims here should be dismissed as moot because judicially noticeable materials make clear that a "fix" is readily available and the FAC is devoid of any allegation that the BIOS update does not fully cure the alleged stuttering issue.

      To be sure, in some cases courts have allowed claims based on alleged "defects" to continue where the "fix" or remedy is shown to be inadequate. But in those cases customers who argued that a free warranty repair or other fix is inadequate were required to specifically plead

facts as to why the repair is insufficient.  *See, e.g.*, *MacBook Keyboard*, 2019 WL 6465285, at *8

(plaintiffs sufficiently pleaded that the remedial program offered by defendant did not effectively

fix the defect in plaintiffs' keyboards); *see also Reniger v. Hyundai*, 122 F. Supp. 3d 888, 894

(N.D. Cal. 2015) (plaintiff who was not eligible for defendant's service campaign had standing to

sue for car defect).  As *Hadley* makes clear, Plaintiffs cannot simply ignore an available fix in

order to avoid dismissal.  In granting defendant's motion to dismiss, the *Hadley* court expressly

rejected plaintiffs' argument that their claims should be permitted to proceed "until it is at least

evident that the repair cures the defect," explaining that "this could require the Court … to keep

this litigation open indefinitely waiting for an indication that the repair was not successful."  2014

WL 988962, at *6.  Here, Plaintiffs fail to mention the BIOS updates *at all* in the FAC, much less

explain how they fail to remedy the alleged stuttering issue.[4]

The existence of a "live controversy" is a threshold issue for each of Plaintiffs' claims.

*See Davis*, 440 U.S. at 631.  Accordingly, to the extent Plaintiffs' claims are based on the alleged

stuttering issue, they must be dismissed as moot in light of the widely available BIOS updates.

**B.     The Vague "Security Vulnerability" Claims Fail to Allege a Concrete Injury**

Next, all claims Plaintiffs bring based on purported "security" defects are insufficient as a

matter of law because Plaintiffs have not and cannot allege any concrete injury to themselves or

their PCs based on either (1) the nonsensical claim that AMD "failed" to provide a "discrete" or

"hardware" TPM or (2) vague and often purely theoretical purported security risks associated

with the use of fTPM in their Ryzen CPUs.  *See Spokeo*, 578 U.S. at 340 (a concrete injury must

actually exist to establish injury in fact for Article III standing).

First, all of Plaintiffs' claims appear to be premised on the claim that the only "real" TPM

is a discrete hardware TPM that is separate from the CPU.  *See, e.g.*, FAC ¶ 25 ("The flawed

_____

[4] Plaintiffs' conclusory statement that stuttering "cannot be fixed through a firmware update"

(FAC IV.D) should be rejected.  Plaintiffs have not and cannot explain how AMD's design would

prevent the stuttering from being fixed by firmware updates when the stuttering is supposedly

caused by the firmware itself (i.e., fTPM).

DEF.'S MOTION TO DISMISS;
REQUEST FOR JUDICIAL NOTICE
NO. 5:22-CV-04305-BLF

1  AMD fTPM design … implemented what should have been—by definition—a segregated

2  hardware module in the CPU's firmware[.]").  However, as described *supra* at II.B, by definition,

3  discrete hardware TPMs are stand-alone chips on a PC's motherboard that are separate from the

4  CPU itself.  AMD designs CPU chips, not motherboards or fully assembled personal computers,

5  and AMD cannot control whether the motherboard manufacturer or the builder of the computer

6  ultimately enables fTPM or installs a separate hardware TPM.  Ex. 12 at 3, *TPM and Secure*

7  *Boot: What Are They and How Do I Enable Them?,* Aug. 9, 2022, SweetWater ("The TPM

8  system comes in a few different forms: a physical chip that you can *install on a specific*

9  *motherboard header*, a module that is already *soldered to the motherboard*, or one that is

10  firmware-based that you can enable within your BIOS[.] ... **Only** download motherboard or BIOS

11  firmware and drivers directly from the manufacturer.") (italics added).  In a "but-for" world

12  where AMD did not enable fTPM, users would be required to purchase a discrete hardware TPM

13  (or other TPM solution) from their motherboard manufacturer or a different company in order to

14  run new operating systems like Windows 11.  Ex. 13 at 15, *How to Enable TPM 2.0 in BIOS for*

15  *Windows 11*, July 18, 2022, WePC ("Unfortunately, if you're [*sic*] system doesn't support (or

16  have) a TPM 2.0 module, you'll either have to purchase a TPM module and install it – or

17  purchase a completely new motherboard.").  If Plaintiffs wanted the enhanced security benefits

18  they claim can only come from a discrete hardware TPM, they can easily purchase and/or install

19  one.  Ex. 14, Amazon.com (113 results for TPM chip on Amazon).  But whatever "injury"

20  Plaintiffs claim to have suffered from the lack of a separate hardware TPM has nothing to do with

21  AMD (by definition) because that type of TPM is necessarily installed on the motherboard by the

22  PC maker or motherboard manufacturer—*not* AMD.  *Spokeo*, 578 U.S. at 338 (injury in fact must

23  be "fairly traceable to the challenged conduct of the defendant").

24         Second, Plaintiffs do not contend they suffered any concrete injury as a result of any

25  "security" risk.  Nowhere in the FAC do Plaintiffs allege that they actually experienced a

26  cyberattack on their PCs due to the alleged security vulnerability caused by AMD's fTPM.  And

27  to the extent that Plaintiffs' claims are based on a heightened risk of *potential* security

28  vulnerabilities, these claims still fail to establish threatened injury that would rise to the level of

13

an injury in fact. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) ("threatened injury must be certainly impending to constitute injury in fact") (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)); *compare In re Zappos.com*, 888 F.3d 1020, 1027–28 (9th Cir. 2018) (holding plaintiffs possessed Article III standing where attackers had already accessed plaintiffs' confidential information), *with Krottner v. Starbucks Corp.*, 628 F.3d 1139, 1143 (9th Cir. 2010) (risk plaintiffs' laptops may be stolen in the future is too speculative to constitute injury in fact).

Here, most of Plaintiffs' descriptions of potential security risks in their FAC are unrelated to AMD's CPUs or even CPUs in general. As described *supra* at II.D, the vast majority of the materials cited by Plaintiffs stand for the general proposition that firmware attacks exist (FAC ¶¶ 81–88) and/or provide examples of security issues that are entirely unrelated to AMD's fTPM and its CPUs (*see id.* ¶¶ 89–92 (attacks on UEFI firmware, which is part of a PC's motherboard and is unrelated to the processor), 93-96 (vulnerabilities specific to Apple's Thunderbolt ports), and 97-98 (threats specific to automotive software)). And even among the allegations that actually refer to AMD's fTPM, many of those allegations are simply generic and conclusory assertions that attacks *may* be possible. *See, e.g., id.* ¶ 20 ("uniquely vulnerable to cyberattacks that exploit a PC's firmware"); *id.* ¶ 177 ("woefully fails to provide the security provided by the TPM 2.0 standard"). But AMD never promised that its chips would be 100% protected against all possible firmware attacks, much less that they were invulnerable to every security threat. As multiple courts have held, the mere fact that some level of cybersecurity risk exists is not actionable absent some sort of affirmative promise to the contrary (and none is alleged here). *See, e.g., Hauck v. AMD*, 2019 WL 1493356, at *14 (N.D. Cal. Apr. 4, 2019) (rejecting security risk claims where plaintiffs did not point to any AMD representations promising processors would be immune from attack); *see also In re Apple*, 2022 WL 2064975, at *6 (N.D. Cal. June 8, 2022) (defendant made no specific or absolute characterizations about security of phones).

In fact, in the entire FAC, Plaintiffs cite only *one* example where researchers discovered a potential vulnerability in AMD's PSP specific to fTPM. *See* FAC ¶ 128. But that potential attack is highly unlikely to occur; the attacker would first have to gain physical (not remote) access to the motherboard and then modify SPI-Flash before the issue could be exploited, and given those

1    conditions, the attacker would already have access to the information protected by the TPM (such

2    as cryptographic keys).  Ex. 25, *Security hole in AMD CPUs' hidden secure processor code*

3    *revealed ahead of patches, Googler drops bug bomb in public – but don't panic,* Jan. 6, 2018,

4    TheRegister.com.  There is nothing to suggest this supposed vulnerability presents any issue in

5    the real world, particularly after a PC is equipped with the latest BIOS updates; by their own

6    admission, researchers used an ARM emulator rather than "any actual AMD hardware" to

7    perform this "test" and the test predated AMD's release of the BIOS fixes.  Ex. 32 at 3 ("Without

8    access to a real AMD hardware, we used an ARM emulator …").  And Plaintiffs do not contend

9    that they were impacted by this theoretical risk or that their own data was compromised.

10         Many courts have stated that a general risk of security threats, like those cited by Plaintiffs

11    here, is not "fraudulent" or otherwise actionable as a matter of law.  *See, e.g.*, *In re Intel*, 2021

12    WL 1198299, at *7 (plaintiffs had not sufficiently alleged an omission to satisfy fraud because

13    the security threat was "known in the industry"); *In re Apple Processor Litig.*, 366 F. Supp. 3d

14    1103, 1110 (N.D. Cal. 2019) (rejecting plaintiffs' diminution in value argument because plaintiffs

15    did not allege facts to show industry-wide security vulnerabilities posed an immediate risk to their

16    devices).  For example, in *Cahen*, the Ninth Circuit held that consumers failed to sufficiently

17    allege an injury for Article III standing due to the risk of hacking itself.  717 F. App'x at 723.

18    There, plaintiffs alleged that defendants engaged in unfair, deceptive, and/or fraudulent business

19    practices because they failed to disclose the fact that their vehicles are susceptible to hacking.  *Id*.

20    They also alleged their vehicles were "worth less than what they paid for ... due to these hacking

21    vulnerabilities."  *Id*.  The court rejected those claims—the hacking risks were speculative because

22    plaintiffs were not aware of any vehicles that had been hacked outside of controlled environments

23    and the risks of a hack in the real world was not imminent.  *Id*.  The same is true here: Plaintiffs

24    have not alleged that they have experienced any security breach and have not provided examples

25    of real world hacking risks outside of security research studies.  FAC ¶¶ 128–30.

26         Nor do Plaintiffs allege they were aware of or relied upon any specific statements by

27    AMD about security that were "false."  *See id*. ¶ 28 (stating that Plaintiff chose an AMD Ryzen

28    CPU "based [*sic*] the materials he read before purchase indicated that the CPU had more cores for

15

better multitasking and background processing"); *id*. ¶ 29 (stating that Plaintiff "reviewed and relied upon marketing materials and online reviews, as well as discussions with sales associates concerning the AMD processor prior to purchasing it").  Instead, the few statements about "security" (e.g., "multi-layered approach to security") discussed in the FAC (which, again, Plaintiffs do not contend they personally relied on) are the kinds of classic, non-actionable statements about products that courts have repeatedly rejected.  *See, e.g.*, *Apple Processor*, 2022 WL 2064975, at *6 ("secure" and built "with your privacy in mind" are non-actionable).  Even if Plaintiffs had pled that they saw and relied on those statements (again, they do not), they would not be able to pursue claims based on these kinds of non-actionable marketing materials.

Simply put, Plaintiffs' assertions that their PCs are at *risk* of cyberattacks is not enough to establish a concrete injury to support Plaintiffs' claims for negligence, unjust enrichment, breach of implied warranties, or breach of the state law consumer fraud statutes.

### C.    The ICFA and WVCCPA Claims Both Fail

Next, Plaintiffs' claims under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") and West Virginia Consumer Credit and Protection Act ("WVCCPA") claims fail because they do not plead that (1) AMD had any actual knowledge of the alleged defects **before** sale of their Ryzen CPUs; (2) AMD made any actionable false statements; and (3) Plaintiffs relied on any of AMD's representations.  Plaintiffs' claims under the ICFA and WVCCPA are all based on the theory that AMD made actionable misrepresentations.  *See* FAC ¶¶ 306 ("AMD's unlawful and unfair conduct described in this Complaint violates the Illinois Consumer Fraud and Deceptive Business Practice Act"), 337 ("AMD represented the Affected CPUs to be of a particular standard, quality or grade, when they were not . . .").  Because Plaintiffs are alleging fraud based claims under the ICFRA and WVCCPA, they must meet Rule 9(b)'s heighted pleading standard.  *See Vess v. Ciba–Geigy Corp.*, 317 F.3d 1097, 1103 (9th Cir. 2003) ("[W]hile a federal court will examine state law to determine whether the elements of fraud have been pled sufficiently to state a cause of action, the Rule 9(b) requirement that the circumstances of the fraud must be stated with particularity is a federally imposed rule."), *see also Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (fraud-based claims must be pled

1    with particularity).  Here, Plaintiffs fail to allege their fraud claims with the requisite "time, place,

2    and specific content of the false representations as well as the identities of the parties to the

3    misrepresentations."  *Swartz v. KPMG*, 476 F.3d 756, 764 (9th Cir. 2007) (citation omitted).

### 1.    No showing of knowledge of any defect prior to purchase

5           Under the ICFA and WVCCPA, Plaintiffs must allege that AMD made an affirmative

6    representation or omission that was the proximate cause of their injuries.  815 ILCS 505/2; W.

7    Va. Code § 46A-6-102(7).  However, a defendant has no duty to disclose "at the time of sale" that

8    which it does not know.  *Wilson v. HP*, 668 F.3d 1136, 1145 (9th Cir. 2012) ("Plaintiffs must

9    allege HP's knowledge of a defect to succeed on their claims … ."); *Williams v. Yamaha*, 51 F.3d

10   1015, 1025 (9th Cir. 2017) ("[A] party must allege ... that the manufacturer knew of the defect at

11   the time a sale was made.");  *Hauck*, 2019 WL 1493356, at *12.  And here, Plaintiffs have not

12   pled any facts that show AMD knew about the alleged stuttering defects at the time Plaintiffs

13   bought their chips in 2019 and 2020.  FAC ¶¶ 28–29.  Those purchases were made years before

14   the articles and posts Plaintiffs cite that describe the stuttering issue—all of which were published

15   in 2021 or 2022.  *Id.* ¶¶ 148–162.  Plaintiffs do make the conclusory assertion that "AMD knew

16   of the defect at issue in this FAC at the time it sold the Affected CPUs to Plaintiffs and Class

17   Members."  *Id.* ¶ 299.  But those are precisely the sort of vague allegations of "knowledge" that

18   courts reject as insufficient.  *Hauck*, 2019 WL 1493356, at *12 ("vague allegations about general

19   knowledge" are "insufficient to allege that [defendant] knew of any specific" defect); *Wilson*, 668

20   F.3d at 1145–47 (allegations that company "became familiar with" and was "on notice of" a

21   defect are conclusory; even "aggregate information and data" like customer complaints was

22   insufficient); *Mandani v. Volkswagen*, 2019 WL 652867, at *8 (N.D. Cal. Feb. 15, 2019)

23   ("conclusory allegations of pre-purchase knowledge based on 'pre-sale design and testing' are

24   insufficient"); *Blissard v. FCA*, 2018 WL 6177295, at *13 (C.D. Cal. Nov. 9, 2018) (rejecting

25   claim defendant knew or should have known from "pre-sale testing," "[defendant's] own

26   records," "publicly-available consumer complaints," and "STAR Case Reports").

### 2.    No actionable statements

28          Next, to the extent Plaintiffs' claims are based on an affirmative misrepresentation, they

1   fail because Plaintiffs never identify any statements other than non-actionable marketing

2   statements or statements that are clearly true.  *See Glen Holly Ent.*, *v. Tektronix*, 343 F.3d 1000,

3   1015 (9th Cir. 2003) ("generalized, vague and unspecific assertions, constituting mere 'puffery'

4   upon which a reasonable consumer could not rely") (citation omitted).  First, many of the

5   marketing statements Plaintiffs cite are not alleged to be false.  For example, Plaintiffs do not

6   dispute that AMD's Ryzen processor is "[t]he World's Fastest PC Gaming Processor" or provides

7   "leadership performance."  FAC ¶¶ 181, 190.  Second, many of the other statements Plaintiffs cite

8   (including statements related to graphics and security) are exactly the kinds of non-actionable

9   marketing statements that have been rejected as actionable "misrepresentations" by multiple

10  courts.  *Compare, e.g.*, FAC ¶¶ 182, 185, 186, 189, 196–198, 201 ("gorgeous entertainment,"

11  "built to game," "seamless streaming," "faster performance for productivity applications,"

12  "exclusive security features," "multilayered approach to security," "built with security in mind"),

13  *with Apple*, 2022 WL 2064975, at *6 ("secure" and built "with your privacy in mind");

14  *Oestricher v. Alienware*, 544 F. Supp. 2d 964, 973 (N.D. Cal. 2008) ("faster, more powerful and

15  more innovative than competing machines," "longer battery life," "higher performance"); *Tomek*

16  *v. Apple*, 2013 WL 3872774, at *5 (E.D. Cal. July 25, 2013), *aff'd*, 636 F. App'x 712 (9th Cir.

17  2016) ("huge leap[] in performance" that makes it "so your work just goes smoother and faster");

18  *Elias*, 903 F. Supp. 2d at 854–55 ("ultra-reliable performance"); *McKinney v. Google*, 2011 WL

19  3862120, at *6 (N.D. Cal. Aug. 30, 2011) ("[G]eneralized, vague, and unspecified assertions

20  constitute mere puffery upon which a reasonable consumer could not rely"); *see also Vitt v.*

21  *Apple*, 469 F. App'x 605, 607 (9th Cir. 2012) ("rugged," "built to withstand reasonable shock,"

22  "reliable," "high performance," "high value").  In addition, statements about a product's attributes

23  are not promises that the product will never malfunction.  *See Consumer Advocates v. Echostar*,

24  113 Cal. App. 4th 1351, 1361 (2003) ("Neither 'crystal clear' nor 'CD quality' can reasonably be

25  understood as a promise of perfection."); *see also Valley Fresh Produce v. W. Skyways*, 2019 WL

26  4695668, at *6 (D. Colo. Sept. 25, 2019).  Thus, statements about graphics or security that were

27  accurate when made (assuming any were actionable, which they are not) cannot support "fraud"

28  claims simply because the product later malfunctioned.

The one statement Plaintiffs cite that is theoretically actionable does not support their claims here.  In the FAC, Plaintiffs contend that AMD represents its CPUs "fully support Windows 11 security features."  FAC ¶ 196.  But they do not contend that they saw or relied on that statement when buying their chips—nor can they, because Windows 11 was released *years* after they bought their CPUs.  *Id.* ¶¶ 28 (Day purchased in 2020), 29 (Dobek purchased in 2019), 109 (Windows 11 launched in October 2021).  As set out above, Plaintiffs' suggestion that AMD's CPUs are not compatible with Windows 11 is also false—according to Microsoft itself, fTPM is one of multiple TPMs that comply with TPM 2.0 specifications and Microsoft "does not take a position on which way a TPM should be implemented."  Ex. 15 at 5.  But more fundamentally, as a hardware manufacturer, AMD cannot be responsible for *future* requirements that Microsoft implements *after* AMD's chips are sold.  Indeed, multiple courts have rejected similar claims in similar contexts.  *See, e.g.*, *Garcia*, 859 F. Supp. 2d at 1063 ("[Plaintiff] simply cannot maintain an action sounding in fraud based on Sony's supposed clairvoyance as to unspecified, future technological advancements in the field.").  In *Yastrab*, 173 F. Supp. 3d at 979, for example, the court dismissed plaintiffs' claims because they had "not identified a 'specific and unequivocal written statement' constituting an explicit guarantee that functionality would not be affected by future software updates."  And in *Baird v. Samsung*, 552 F. Supp. 3d 679, 688 (N.D. Cal. 2021), the court dismissed claims that customers who bought Samsung's SmartTV were "deceived" because third parties changed their software applications in a way that was incompatible with Samsung's hardware.  *Id.*  So too here—the Court should reject any claim that AMD should be liable over (supposed) incompatibilities with *new* software released *after* Plaintiffs' purchases.

### 3. No reliance

Plaintiffs' claim under WVCCPA also fails because Plaintiffs do not allege they actually relied on any of the statements they cite (even if the statements were actionable, which they are not).  *See Allen v. Conagra*, 331 F.R.D. 641, 668 (N.D. Cal. 2019) (stating reliance on affirmative misrepresentations must be proven in order to satisfy the requisite causal connection).  Again, while Plaintiffs cite to various representations by AMD (FAC ¶¶ 178–205), they never explain

which (if any) they saw or relied on before buying their CPU chips.  Instead, Plaintiff Day simply states he read materials indicating the "CPU had more cores for better multitasking and background processing" (*id*. ¶ 28), and Plaintiff Dobek "reviewed and relied upon marketing materials and online reviews, as well as discussions with sales associates." *Id*. ¶ 29.  Plaintiffs' claims fail to meet the heightened pleading standard of Fed. R. Civ. P. 9(b), which requires Plaintiffs to "state with particularity the circumstances constituting fraud or mistake."

### D.    The Negligence Claim Is Barred By The "Economic Loss" Rule

Next, Plaintiffs' negligence claim is barred as a matter of law under the "economic loss" rule.  A plaintiff may not recover in tort against a manufacturer for lost economic value associated with (purported) product defects.  *E.g.*, *Casden Builders v. Entre Prises USA*, 2010 WL 2889496, at \*6–7 (C.D. Cal. July 21, 2010); *UMG Recordings v. Glob. Eagle*, 117 F. Supp. 3d 1092, 1103 (C.D. Cal. 2015) ("the economic loss rule is necessary to prevent[] the law of contract and the law of tort from dissolving into one another").  That is exactly what Plaintiffs seek here: "damages for inadequate value, costs of repair and replacement of the defective product or consequent loss of profits—without any claim of personal injury or damages to other property."  *Compare Tasion Commc'ns v. Ubiquiti Networks*, 2013 WL 4530470, at \*3 (N.D. Cal. Aug. 26, 2013), *with, e.g.*, FAC ¶ 244; *see also In re iPhone*, 844 F. Supp. 2d at 1064.

### E.    The Implied Warranty Claims All Fail

Next, Plaintiffs' common law implied warranty and state implied warranty of merchantability claims fail as a matter of law for multiple reasons.  ***First***, Plaintiffs' implied warranty and implied warranty of merchantability claims fail because Plaintiffs have not pled facts to show the processors were "unmerchantable."  Here, Plaintiffs must allege that AMD sold processors that were not simply "defective," but were so seriously defective that they were not fit for their ordinary purpose for which they are used.  *See Hovsepian v. Apple*, 2009 WL 2591445, at \*6 (N.D. Cal. Aug. 21, 2009) (a "defect must be sufficiently serious so as to render the product unfit for its ordinary purpose"); *Heater v. Gen. Motors*, 568 F. Supp. 3d 626, 638 (N.D. W. Va. 2021) ("goods are fit for ordinary purposes for which they are used"); *Rodriguez v. Ford*, 2022 WL 972306, at \*2 (N.D. Ill. Mar. 31, 2022) (same).  Here, the ordinary purpose of AMD's CPUs

1    is to run the PCs in which they are installed.  *E.g.*, *In re Intel*, 2020 WL 1495304, at *13 (D. Or.

2    Mar. 27, 2020) ("Plaintiffs do not assert that the allegedly defective CPUs corrupt data, freeze the

3    computer, or render the computers unable to process commands or run programs"); *see also*

4    *Hauck v. AMD*, 2018 WL 5729234, at *8 (N.D. Cal. Oct. 29, 2018) ("no allegation that the basic

5    functionality of the processors has been compromised by the [Spectre] Defect").  But in this case,

6    the same materials Plaintiffs themselves cite to describe the stuttering issue make clear that the

7    "stuttering" issue was intermittent and very infrequent (if it happened at all).  Ex. 21 at 3 *Youtube*

8    (Jan. 29, 2022), *quoted at* FAC ¶ 151 ("[Stuttering] happens for about 3 or 4 times a day and

9    doesn't seem to be affecting performance or anything else"); *see also* Exs. 18, 22 (same), *cited at*

10   FAC ¶¶ 155, 160.  And, as discussed above, the vague "security" threats Plaintiffs cite never

11   materialized and Plaintiffs do not contend they had any impact on the use of their PCs—Plaintiffs

12   do not contend that they had to stop using their computers or that their use was disrupted in any

13   significant way.  FAC ¶¶ 28–29.  On these facts, Plaintiffs' implied warranty claims all fail.  *See*

14   *Intel*, 2020 WL 1495304, at *13; *Hauck*, 2018 WL 5729234, at *9 (a "ball park figure of five to

15   30 percent slow down" after patch does not render CPU unfit for its ordinary purpose).

16       ***Second***, the putative "nationwide" implied warranty claims also fail for lack of privity to

17   the extent customers (like Plaintiffs) did not buy directly from AMD.  Plaintiffs purport to bring

18   that claim "under the law of warranties, which is materially uniform in all states," or claim, in the

19   alternative, breach of implied warranty on behalf of the Illinois and West Virginia subclasses.

20   FAC ¶ 291.  But warranty law is *not* uniform in all states.  For example, if California law applies,

21   a party asserting a claim for implied warranty typically must establish "vertical contractual

22   privity" between the plaintiff and the defendant.  *E.g.*, *Clemens v. DaimlerChrysler*, 534 F.3d

23   1017, 1024 (9th Cir. 2008) ("A lack of vertical privity requires the dismissal of [plaintiff's]

24   implied warranty claims."); *All W. Elecs. v. M-B-W*, 64 Cal. App. 4th 717, 725 (1998) ("Privity of

25   contract is a prerequisite in California").  Under California law, Plaintiffs' claims would fail

26   because they did not buy directly from AMD.  *Compare, e.g.*, FAC ¶ 28 (Day bought from

27   Amazon), *and id.* ¶ 29 (Dobek bought from Micro Center Computers & Electronics), *with, e.g.*,

28   *Clemens*, 534 F.3d at 1023 (plaintiff who bought from a retailer not in privity with manufacturer).

DEF.'S MOTION TO DISMISS;
REQUEST FOR JUDICIAL NOTICE
NO. 5:22-CV-04305-BLF

1   But in West Virginia, privity is not required. *See E. Steel Constructors v. City of Salem*, 549

2   S.E.2d 266, 276 (W. Va. 2001). And Illinois requires privity but has a third-party beneficiary

3   exception (which Plaintiffs have not satisfied). *See O'Connor v. Ford*, 567 F. Supp. 3d 915, 944–

4   45 (N.D. Ill. 2021). Given that outcomes vary depending on what state law is applied, Plaintiffs'

5   claim under the unspecified "law of warranties" should be dismissed.

6       *Finally*, Plaintiffs' implied warranty claims under W. Va. Code § 46-2-314 and 810 Ill.

7   Comp. Stat. 5/2-314 fail because AMD disclaimed them. AMD's disclaimer complies with W.

8   Va. Code § 46-2-316 and 810 Ill. Comp. Stat. 5/2-316, because it is "conspicuous" (in all caps)

9   and "mention[s] merchantability." Ex. 33, AMD Processor in a box (PIB) 3 Year Limited

10   Warranty. *See also Appalachian Leasing v. Mack Trucks*, 765 S.E.2d 223, 231 (W. Va. 2014);

11   *Van Zeeland v. Rand McNally*, 532 F. Supp. 3d 557 (N.D. Ill. 2021). And while Plaintiffs make

12   conclusory statements that the "time limits contained in AMD's warranty periods were []

13   unconscionable and inadequate" they allege no facts to support that legal argument. FAC ¶ 299.

14   Last, Plaintiffs' allegation that there was a disparity in bargaining power because AMD knew of

15   the defect at the time it sold the affected CPUs fails because, as discussed earlier, Plaintiffs have

16   not plead facts to support this claim. *See supra* Part IV.C.1.

17       **F.    Plaintiffs' Claim for Unjust Enrichment Must Be Dismissed**

18       Plaintiffs' claim for unjust enrichment must also be dismissed. Again, Plaintiffs do not

19   specify which law applies and bring the claim "under the common law of unjust

20   enrichment/quasi-contract" which they say is "materially uniform in all states." FAC ¶ 282. That

21   is simply wrong. *In re Cathode Ray Tube*, 2013 WL 4505701, at *12 (N.D. Cal. Aug. 21, 2013)

22   (unjust enrichment is not uniform across states). Indeed, if California law applies the claim fails

23   on its face because that claim does not exist under California law. *Astiana v. Hain*, 783 F.3d 753,

24   762 (9th Cir. 2015). Plaintiffs should be required to identify the law they contend applies here.

25       **G.    Plaintiffs Lack Standing to Sue for Unpurchased Athlon Products**

26       Finally, Plaintiffs lack standing to sue over Athlon chips they did not buy. *Granfield v.*

27   *NVIDIA*, 2012 WL 2847575, at *6 (N.D. Cal. July 11, 2012) ("[w]hen a plaintiff asserts claims

28   based both on products that she purchased and products that she did not purchase, claims relating

to products not purchased must be dismissed for lack of standing").  Some courts have allowed claims over products not purchased if they are "substantially similar" to products that were bought.  *See Romero v. HP*, 2017 WL 386237, at *7 (N.D. Cal. Jan. 27, 2017).  But here, Plaintiffs have not pled substantial similarity between the Ryzen and Athlon processors—the chips have different designs, were released *years* apart, and most of the examples Plaintiffs cite address Ryzen chips only.  *See*, e.g., FAC ¶¶ 148–163, 178, 181–184, 190, 192, 196–202, 206–207.

## V.     CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' claims with prejudice.

## REQUEST FOR JUDICIAL NOTICE

Pursuant to Federal Rule of Evidence 201(b), Defendant Advanced Micro Devices, Inc. ("AMD"), by and through their counsel of record, respectfully requests that this Court take judicial notice of each of the documents attached as exhibits to the Declaration of Matthew D. Powers in Support of AMD's filed Motion to Dismiss (the "Powers Declaration").  The Court may take judicial notice of these materials because they are readily accessible, not subject to reasonable dispute, and a subset (Category D[5]) may also be incorporated by reference because they are referenced directly in the First Amended Complaint ("FAC").

*First*, when ruling on a motion to dismiss, a court must take judicial notice of adjudicative facts if it is supplied with the required information and is requested by a party.  Fed. R. Evid. 201(d); *Tellabs, Inc. v. Makor*, 551 U.S. 308, 322 (2007); *Khoja v. Orexigen*, 899 F.3d 988, 999 (9th Cir. 2018), *aff'd in part*, 805 F. App'x 525 (2020).  Specifically, a court may take judicial notice of a fact "not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b); *see Khoja*, 899 F.3d at 999, 1001; *accord United States v. Ritchie*, 342 F.3d 903, 908–09 (9th Cir. 2003).  Each of the

---

[5] The exhibits and categories referred to herein are set forth in the concurrently-filed Powers Declaration.

DEF.'S MOTION TO DISMISS;
REQUEST FOR JUDICIAL NOTICE
NO. 5:22-CV-04305-BLF

1    submitted exhibits meets this standard and therefore is the proper subject of judicial notice.

2         Each of the categories described directly below contain articles, webpages, or online

3    videos that are all publicly-available and are capable of being verified by utilizing sources whose

4    accuracy cannot reasonably be questioned.  *See Peckerar v. Gen. Motors*, 2020 WL 6115083, at

5    *1 n.1 (C.D. Cal. Aug. 17, 2020) (taking judicial notice of defendant's recall report); *In re*

6    *MacBook*, 2019 WL 6465285, at *2 (N.D. Cal. Dec. 2, 2019) (taking notice of defendant's

7    Keyboard Service Program); *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 259 n.2 (9th Cir. 2013)

8    (newspaper and magazine articles); *Heliotrope v. Ford*, 189 F.3d 971, 981 n.18 (9th Cir. 1999)

9    (public status of "information contained in news articles submitted by the defendants"); *Datel*

10   *Holdings v. Microsoft*, 712 F. Supp. 2d 974, 985 (N.D. Cal. 2010) (taking judicial notice of

11   statements in the public realm); *In re Guess?*, 174 F. Supp. 2d 1067, 1068 n.1 & 1071 (C.D. Cal.

12   2001) (taking judicial notice of newspaper articles on a motion to dismiss).  Courts "routinely

13   take judicial notice of publications" in this circumstance.  *In re Sorrento*, 2021 WL 6062943, at

14   *4 (S.D. Cal. Nov. 18, 2021) (citing *Von Saher v. Norton Simon Museum of Art*, 592 F.3d 954,

15   960 (9th Cir. 2010)).

16        Under **Category A**, AMD seeks judicial notice of Exhibits 1-8 as well as of the following

17   facts demonstrated therein: there can be no reasonable dispute that (1) AMD has provided BIOS

18   updates to motherboard manufacturers to fix the issues identified in Plaintiffs' FAC including the

19   alleged stuttering issue, (2) this fact was made publicly available, and (3) AMD's website directs

20   consumers to the websites of motherboard manufacturers where the BIOS updates can be

21   downloaded.  Under **Category B**, AMD seeks judicial notice of Exhibits 9-14, as well as of the

22   following facts demonstrated therein: (1) TPM is available in several forms, including a discrete

23   hardware TPM and a firmware TPM, (2) TPM 2.0 specifically contemplates and allows firmware

24   TPM, (3) motherboard manufacturers select the type of TPM enabled on a device, (4) discrete

25   hardware TPMs are available through online retailer, Amazon.  Under **Category C**, AMD seeks

26   judicial notice of Exhibits 15-17, as well as of the following facts demonstrated therein: (1)

27   Microsoft does not take a position on which way TPM should be implemented, (2) Microsoft

28   specifically permits use of firmware TPMs with Windows 11, and (3) Microsoft states that the

1   end device, not the processor itself, must comply with TPM 2.0.  Under **Category D**, AMD seeks

2   judicial notice of the items attached as Exhibits 9 and 18-23, which are all cited in the FAC.

3   Under **Category E**, AMD seeks judicial notice of Exhibits 24-33, which all directly bear upon

4   allegations in the FAC.  Specifically, Exhibits 24-32 are articles describing and disputing the

5   alleged security vulnerabilities underlying Plaintiffs' claims and referenced at paragraphs 128-

6   131 of the FAC.  Exhibit 33 is AMD's product warranty, which shows AMD has disclaimed

7   implied warranties.

8         ***Second***, it is well-established that "[d]ocuments whose contents are alleged in a complaint

9   and whose authenticity no party questions, but which are not physically attached to the pleading,

10  may be considered in ruling on a Rule 12(b)(6) motion to dismiss."  *In re Van Wagoner*, 382 F.

11  Supp. 2d 1173, 1178 n.1 (N.D. Cal. 2004); *see also No. 84 Emp.-Teamster Joint Council v. Am.*

12  *W. Holding*, 320 F.3d 920, 925 n.2 (9th Cir. 2003) (considering documents "referenced in the

13  complaint and whose authenticity has not been questioned").  Because the **Category D** items are

14  all directly referenced and/or quoted in the FAC (as detailed above) they are appropriate for

15  incorporation by reference.  *In re Sorrento*, 2021 WL 6062943, at *4.

16        For the foregoing reasons, AMD respectfully requests that the Court grant its request for

17  judicial notice and incorporation by reference.

18

19   Dated:  September 29, 2022               O'MELVENY & MYERS LLP

20                                           By: */s/ Matthew D. Powers*

21                                                Matthew D. Powers

22                                           Attorneys for Defendant
                                             ADVANCED MICRO DEVICES, INC.

23

24

25

26

27

28

DEF.'S MOTION TO DISMISS;
REQUEST FOR JUDICIAL NOTICE
NO. 5:22-CV-04305-BLF