MATTHEW D. POWERS (S.B. #212682)
mpowers@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center
28th Floor
San Francisco, CA 94111
Telephone: (415) 984-8700
Facsimile: (415) 984-8701

*Attorneys for Defendant*
*Advanced Micro Devices, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| JONATHAN DAY and MICHELLE DOBEK, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ADVANCED MICRO DEVICES, INC., a Delaware corporation,<br><br>Defendant. | Case No. 3:22-cv-04305-VC<br><br>**DEFENDANT ADVANCED MICRO REPLY IN SUPPORT OF ADVANCED MICRO DEVICES, INC.'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Hearing Date: May 25, 2023<br>Time:  10:00 a.m.<br>Judge:  Honorable Vince Chhabria<br>Courtroom: 05<br><br>Complaint Filed: July 26, 2022<br>FAC Filed: August 12, 2022<br>SAC Filed: March 23, 2023 |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.   ARGUMENT ...................................................................................................... 2

    A.   Plaintiffs' Opposition Confirms They Cannot State Any Fraud-Based
        Claims Under California, Illinois, or West Virginia Law ......................................... 2

        1.   Pre-Sale "Knowledge" ........................................................................ 2

        2.   Plaintiffs Identify No False Statements, Only Nonactionable
            Puffery .............................................................................................. 3

        3.   The "Materiality" of AMD's Supposed "Omissions" Are Irrelevant
            to Plaintiffs' Alleged *Misrepresentations* ........................................... 4

    B.   Plaintiffs' Causation Arguments Do Not Address the Fact that AMD
        Cannot Be Responsible for "Failing" to Provide a TPM Separate from Its
        CPU ....................................................................................................................... 4

    C.   California Law Does Not Apply to Plaintiffs' Claims ............................................. 6

    D.   UCL Claims Overlap with Fraud Claims and Satisfy No Test ................................ 6

    E.   No Entitlement to Injunctive Relief or Nonrestitutionary Disgorgement ................ 9

III.  CONCLUSION ................................................................................................. 10

1

2

3

# TABLE OF AUTHORITIES

Page

<u>CASES</u>

*Ahern v. Apple,*
   411 F. Supp. 3d 541 (N.D. Cal. 2019) ....................................................................................... 4

*Anunziato v. eMachines,*
   402 F. Supp. 2d 1133 (C.D. Cal. 2005) ..................................................................................... 4

*Baba v. HP,*
   2011 WL 317650 (N.D. Cal. Jan. 28, 2011) .............................................................................. 3

*Bardin v. DaimlerChrysler,*
   39 Cal. Rptr. 3d 634 (2006) ....................................................................................................... 8

*Berenblat v. Apple,*
   2010 WL 1460297 (N.D. Cal. Apr. 9, 2010) ............................................................................ 3

*Bird v. First Alert,*
   2014 WL 7248734 (N.D. Cal. Dec. 19, 2014) ..................................................................... 9, 10

*Casey v. Gen. Motors,*
   2021 WL 5417041 (S.D. Cal. Nov. 19, 2021) .......................................................................... 8

*Cover v. Windsor Surry,*
   2016 WL 520991 (N.D. Cal. Feb. 10, 2016)............................................................................. 6

*Cty. of San Bernardino v. Walsh,*
   |158 Cal. App. 4th 533 (2007)................................................................................................. 10

*Davidson v. Kimberly-Clark,*
   889 F.3d 956 (9th Cir. 2018).................................................................................................. 10

*Doe v. CVS,*
   982 F.3d 1204 (9th Cir. 2020)............................................................................................... 7, 8

*Duprey v. Conn. Dep't of Motor Vehicles,*
   191 F.R.D. 329 (D. Conn. 2000)............................................................................................ 10

*Durell v. Sharp,*
   183 Cal. App. 4th 1350 (2010) ................................................................................................. 8

*Duttweiler v. Triumph,*
   2015 WL 4941780 (N.D. Cal. Aug. 19, 2015).......................................................................... 9

*Edwards v. FCA,*
   2022 WL 1814144 (N.D. Cal. June 2, 2022) ............................................................................ 2

*Ehret v. Uber,*
   68 F. Supp. 3d 1121 (N.D. Cal. 2014) ...................................................................................... 6

*Emp. Teamsters-Local v. Bristol Myers,*
   969 F. Supp. 2d 463 (S.D. W. Va. 2013) ................................................................................. 5

1

2

**TABLE OF AUTHORITIES**
(continued)

**Page**

3

4

*Fabozzi v. StubHub*,
    2012 WL 506330 (N.D. Cal. Feb. 15, 2012) ............................................................................. 7

5

*Figy v. Frito-Lay N. Am.*,
    67 F. Supp. 3d 1075 (N.D. Cal. 2014) ..................................................................................... 4

6

7

*Flier v. FCA*,
    2022 WL 16823042 (N.D. Cal. Nov. 8, 2022) ..................................................................... 1, 2

8

*Garcia v. Harley-Davidson*,
    2019 WL 6050768 (N.D. Cal. Nov. 15, 2019) ........................................................................ 4

9

10

*Hadley v. Kellogg*,
    243 F. Supp. 3d 1074 (N.D. Cal. 2017) ................................................................................... 7

11

*Hauck v. AMD*,
    2019 WL 1493356 (N.D. Cal. Apr. 4, 2019) ........................................................................... 3

12

*Hindsman v. Gen. Motors*,
    2018 WL 2463113 (N.D. Cal. June 1, 2018) ........................................................................... 6

13

14

*Hodson v. Mars*,
    891 F.3d 857 (9th Cir. 2018) ................................................................................................... 8

15

*Hoey v. Sony*,
    515 F. Supp. 2d 1099 (N.D. Cal. 2007) ................................................................................... 7

16

17

*Hunter v. Nature's Way*,
    2016 WL 4262188 (S.D. Cal. Aug. 12, 2016) ....................................................................... 10

18

*In re Actimmune*,
    2009 WL 3740648 (N.D. Cal. Nov. 6, 2009), *aff'd*, 464 F. App'x 651 (9th Cir.
    2011) .......................................................................................................................................... 7

19

20

*In re Apple*,
    2022 WL 2064975 (N.D. Cal. June 8, 2022) ....................................................................... 1, 4

21

*In re Carrier IQ*,
    78 F. Supp. 3d 1051 (N.D. Cal. 2015) ..................................................................................... 6

22

23

*In re iPhone*,
    2013 WL 3829653 (N.D. Cal. July 23, 2013) .......................................................................... 6

24

*In re MacBook*,
    2019 WL 1765817 (N.D. Cal. Apr. 22, 2019) ..................................................................... 1, 2

25

*In re MacBook*,
    2020 WL 6047253 (N.D. Cal. Oct. 13, 2020) ...................................................................... 2, 9

26

27

*In re Tobacco II*,
    46 Cal. 4th 298 (2009) ............................................................................................................. 4

28

REPLY ISO DEF.'S MOTION TO DISMISS;
NO. 3:22-CV-04305-VC

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*Ivie v. Kraft*,
   2015 WL 183910 (N.D. Cal. Jan. 14, 2015) ................................................................ 10

4

5

*Johnson v. Nissan*,
   272 F. Supp. 3d 1168 (N.D. Cal. 2017) ..................................................................... 6

6

*Lanovaz v. Twinings N. Am., Inc.*,
   2015 WL 729705 (N.D. Cal. Feb. 19, 2015) .............................................................. 10

7

8

*Lusson v. Apple*,
   2016 WL 10932723 (N.D. Cal. June 20, 2016) ......................................................... 4

9

*Mazza v. Am. Honda*,
   666 F.3d 581 (9th Cir. 2012) .................................................................................... 6

10

11

*Moore v. Mars Inc.*,
   966 F.3d 1007 (9th Cir. 2020) .................................................................................. 4

12

*Nazemi v. Specialized*,
   2022 WL 17220707 (C.D. Cal. Oct. 31, 2022) ......................................................... 8

13

14

*Perez v. First Am.*,
   2010 WL 1507012 (D. Ariz. Apr. 14, 2010) ............................................................. 10

15

*Philips v. Ford*,
   2016 WL 7428810 (N.D. Cal. Dec. 22, 2016) *aff'd*, 726 F. App'x 608 (9th Cir.
   2018) ...................................................................................................................... 9

16

17

*Punian v. Gillette*,
   2016 WL 1029607 (N.D. Cal. Mar. 15, 2016) ........................................................... 7

18

*Salazar v. Honest Tea*,
   74 F. Supp. 3d 1304 (E.D. Cal. 2014) ...................................................................... 4

19

20

*Schertzer v. Bank of Am.*,
   445 F. Supp. 3d 1058 (S.D. Cal. 2020) .................................................................... 6

21

*Smith v. Apple*,
   2023 WL 2095914 (N.D. Cal. Feb. 17, 2023) ........................................................ 1, 2

22

23

*Sponchiado v. Apple*,
   2019 WL 6117482 (N.D. Cal. Nov. 18, 2019) ........................................................... 6

24

*Stewart v. Electrolux*,
   2018 WL 1784273 (E.D. Cal. Apr. 13, 2018) ............................................................ 5

25

*Stoot v. City of Everett*,
   582 F.3d 910 (9th Cir. 2009) .................................................................................... 5

26

27

*Tidenberg v. Bidz.com*,
   2009 WL 605249 (C.D. Cal. Mar. 4, 2009) ............................................................... 6

28

iv

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Tomek v. Apple,*
2013 WL 3872774 (E.D. Cal. July 25, 2013), *aff'd*, 636 F. App'x 712 (9th Cir. 2016) ............................................................................................................................. 4

*Victorino v. FCA,*
2018 WL 2455432 (S.D. Cal. June 1, 2018) ................................................................. 9

*Williamson v. Reinalt–Thomas Corp.,*
2012 WL 1438812 (N.D. Cal. Apr. 25, 2012) ............................................................. 7

*Wilson v. HP,*
668 F.3d 1136 (9th Cir. 2012) ................................................................................ 1, 3

*Zeiger v. WellPet,*
526 F. Supp. 3d 652 (N.D. Cal. 2021) .................................................................. 9, 10

## STATUTES

W. Va. Code § 46A-6-102(M) ........................................................................................ 2

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

## I.      INTRODUCTION

Plaintiffs' Opposition confirms that the Second Amended Complaint ("SAC") should be dismissed again, this time with prejudice.  Rather than substantively engage with AMD's arguments, Plaintiffs largely reassert the same deficient allegations they have made since their initial complaint and do not identify any new facts they could plead to save their claims.

*First*, Plaintiffs' attempt to save their allegations of AMD's supposed pre-sale "knowledge" should be rejected as a matter of law.  Plaintiffs must plead specific facts showing AMD actually knew of the alleged stuttering and security "issues" when they bought their CPU chips—generic allegations of pre-sale testing and customer complaints are insufficient as a matter of law.  *Wilson v. HP*, 668 F.3d 1136, 1147 (9th Cir. 2012) (allegation manufacturer "had 'access to the aggregate information and data regarding the risk of overheating' is speculative and does not suggest how any tests or information could have alerted [it] to the defect").  The cases Plaintiffs cite in their Opposition are inapposite—they all involved specific allegations of concrete facts showing pre-sale knowledge.  *Smith v. Apple*, 2023 WL 2095914, at *4 (N.D. Cal. Feb. 17, 2023) ("describe[d] the details of this pre-sale testing"); *In re MacBook*, 2019 WL 1765817, at *6 (N.D. Cal. Apr. 22, 2019) (pre-sale patent application specifically described the defect); *Flier v. FCA*, 2022 WL 16823042, at *2 (N.D. Cal. Nov. 8, 2022) (multiple recalls issued).  But here, Plaintiffs just cite generic pre-sale testing and unidentified online "complaints," without identifying *facts* that could show pre-sale knowledge—particularly since their own allegations make clear no issue was raised until 2021, *years* after their purchases.

*Second*, Plaintiffs argue they have alleged six specific affirmative misrepresentations by AMD.  Opp. 11-12.  But this Court already determined those same statements were "classic, nonactionable puffery."  Order at 3.  Plaintiffs again argue the statements are not "puffery" because they are "capable of objective verification." Opp. 12.  As before, Plaintiffs are wrong – multiple courts have rejected similar allegations.  *E.g.*, *In re Apple*, 2022 WL 2064975, at *6 (N.D. Cal. June 8, 2022) ("secure" and built "with your privacy in mind" are nonactionable).

*Third*, Plaintiffs largely ignore the fundamental causation issue AMD has repeatedly

1  raised in this action—the alleged "defect" here is the implementation of an optional firmware

2  TPM rather than a discrete piece of hardware, and Plaintiffs' demand for a TPM "separate" from

3  the CPU would have to be provided by *another* company.  Again, it is the motherboard or PC

4  manufacturer, not AMD, that determines whether to equip a PC with a separate hardware TPM.

5       ***Finally***, Plaintiffs argue they can seek an injunction and equitable remedies.  Opp. 5-6.

6  But "[c]ourts generally hold that monetary damages are an adequate remedy for claims based on

7  an alleged product defect, and reject[] the argument that injunctive relief requiring repair or

8  replacement is appropriate."  *In re MacBook*, 2020 WL 6047253, at *3 (N.D. Cal. Oct. 13, 2020).

9       Plaintiffs have had multiple opportunities to amend.  Since it is now clear that they cannot

10  plead facts necessary to support their claims, the SAC should be dismissed with prejudice.

11  **II.    ARGUMENT**

12       **A.    Plaintiffs' Opposition Confirms They Cannot State Any Fraud-Based Claims
            Under California, Illinois, or West Virginia Law**

13            1.    Pre-Sale "Knowledge"[1]

14

15       Plaintiffs argue their allegations regarding pre-sale testing, vague references to "message

16  board posts" and "reports" are sufficient to establish AMD's knowledge.  Opp. 9.  But the cases

17  Plaintiffs' cite show how inadequate their allegations here really are.

18       In *Smith v. Apple*, for example, (1) online pre-sale complaints described the defect in the

19  Apple Watch and "posit[ed] that a swelling battery was the cause"; (2) Apple included a system

20  designed to try to prevent the defect; and (3) a pre-sale patent application acknowledged the

21  defect.  Am. Class Action Compl. ¶¶ 61, 62, 68; 2023 WL 2095914, at *4.  In *In re MacBook*,

22  Apple's pre-sale patent application described the defect.  2019 WL 1765817, at *6.  And while

23  the analysis in *Flier* is limited, the manufacturer issued multiple recalls (after the purchase) and

24  the cases the Court relied on included allegations of a technical bulletin on the same defect.  2022

25  WL 16823042, at *2 (citing *Edwards v. FCA*, 2022 WL 1814144 (N.D. Cal. June 2, 2022).

26

27
28
[1] Plaintiffs argue they "need only show causation to plead a pure omissions claim" under WV CCPA.  Opp. 15.  That is incorrect.  The statute requires the omission be made "with intent that others rely upon such concealment, suppression or omission," so they must also plead AMD's knowing (*i.e.*, intentional) concealment.  *See* W. Va. Code § 46A-6-102(M).

But here, Plaintiffs' allegations do not come close to those kinds of specific facts. Instead, Plaintiffs make generic allegations that AMD knew of the alleged defects based on unidentified "message board posts" mentioning stuttering on Microsoft and AMD support forums in 2018 and 2019. Opp. 9; SAC ¶ 259. Unlike in *Smith*, Plaintiffs do not cite specific posts nor explain how general complaints about "stuttering" (which could have many causes), could impart knowledge to AMD that its fTPM caused stuttering. Even if they could, a few pre-sale customer complaints are insufficient. *Baba v. HP*, 2011 WL 317650, at *3 (N.D. Cal. Jan. 28, 2011) ("[a]wareness of a few customer complaints … does not establish knowledge"); *Berenblat v. Apple*, 2010 WL 1460297, at *8-9 (N.D. Cal. Apr. 9, 2010). Likewise as to allegations of pre-sale testing— Plaintiffs never explain *how* Windows 11 testing imparted "knowledge"—particularly since Windows 11 was not released until one to two **years** after Plaintiffs' purchases. SAC ¶¶ 31, 40, 132.

The same is true of Plaintiffs' conclusory allegation that "AMD knew that its implementation created a risk of remote code execution, including through reports by security engineers and third parties directly to AMD." SAC ¶ 263; Mot. 9. Plaintiffs never identify those reports,[2] when they were released, or what they said. SAC ¶ 263; Mot. 9-10. *Hauck v. AMD*, 2019 WL 1493356, at *12 (N.D. Cal. Apr. 4, 2019) ("vague allegations" of "general knowledge" are "insufficient to allege that [defendant] knew of any specific" defect); *Wilson*, 668 F.3d at 1147. In sum, Plaintiffs have not and cannot allege *facts* to show AMD had pre-sale knowledge of the supposed "stuttering" and security "issues."

2.   Plaintiffs Identify No False Statements, Only Nonactionable Puffery

Next, Plaintiffs argue they have alleged six specific affirmative misrepresentations by AMD. Opp. 11-12. But all six are copied verbatim from the prior complaint and this Court already determined they were "classic, nonactionable puffery." Order at 3  Plaintiffs again argue these statements are not "puffery" because they are capable of objective verification. Plaintiffs are

---

[2] If the "reports" are the materials cited at SAC ¶¶ 113-20, 151-53, these materials either (1) discuss firmware attacks generally, untethered to AMD, (2) describe already-resolved security issues, or (3) make assertions about the potential for firmware attacks on AMD's CPUs untethered to any particular risk. Mot. 5; Dkt. 23 at 7-9, 15.

REPLY ISO DEF.'S MOTION TO DISMISS;
NO. 3:22-CV-04305-VC

1  wrong; it is not possible to objectively verify, for example, whether streaming is "seamless"

2  (SAC ¶ 209) or whether "security features" are "a priority."  SAC ¶ 220.  *See Salazar v. Honest*

3  *Tea*, 74 F. Supp. 3d 1304, 1316 (E.D. Cal. 2014) ("Non-specific, non-measurable assertions are

4  classic non-actionable puffery."); *Anunziato v. eMachines*, 402 F. Supp. 2d 1133, 1140 (C.D. Cal.

5  2005) ("reliable"); *In re Apple Processor Litig.*, 2022 WL 2064975, at \*6 ("secure" and built

6  "with your privacy in mind"); *Tomek v. Apple*, 2013 WL 3872774, at \*5 (E.D. Cal. July 25,

7  2013), *aff'd*, 636 F. App'x 712 (9th Cir. 2016) ("huge leap[] in performance").

8          3.      The "Materiality" of AMD's Supposed "Omissions" Are Irrelevant to
                   Plaintiffs' Alleged *Misrepresentations*[3]
9

10         Next, Plaintiffs argue they have sufficiently pled reliance in support of their affirmative

11  misrepresentation claims because they allege "the omitted truth about the defect was highly

12  material to them."  Opp. 13 (citing SAC ¶¶ 31-47).[4]  Whether any *omissions*[5] were material has

13  no impact on the *affirmative misrepresentation* claims.  To plead reliance, Plaintiffs must identify

14  specific misstatement(s) they relied upon in the first instance.  *Ahern v. Apple*, 411 F. Supp. 3d

15  541, 564 (N.D. Cal. 2019); *Garcia v. Harley-Davidson*, 2019 WL 6050768, at \*5 (N.D. Cal. Nov.

16  15, 2019) ("failure to identify which representations he relied on … warrants dismissal" even

17  under Rule 8).  As this Court has already held,[6] Plaintiffs have not done so.

18     **B.     Plaintiffs' Causation Arguments Do Not Address the Fact that AMD Cannot
                Be Responsible for "Failing" to Provide a TPM Separate from Its CPU**
19

20         Plaintiffs never directly engage with AMD's central argument:  AMD is not and cannot be

21  _____

    [3] Plaintiffs argue they need not demonstrate reliance for their fraud-by-omission claim under the
22  WVCCPA.  Opp. 15.  But AMD's reliance argument is clearly directed at the Fraud Claims to the
    extent they are based on *affirmative misrepresentations*.  Mot. 11.
23  [4] Plaintiffs also appear to argue they need not plead actual reliance if "members of the public are
    likely to be deceived."  Opp. 13.  This misstates the law: named plaintiffs in class actions must
24  plead actual reliance.  *In re Tobacco II*, 46 Cal. 4th 298, 328 (2009) ("plaintiff must plead …
    actual reliance"); *Figy v. Frito-Lay N. Am.*, 67 F. Supp. 3d 1075, 1088 (N.D. Cal. 2014).
25  [5] The omission claims fail for independent reasons. *See supra* at 2-4 and *infra* at 7-9.
    [6] Order at 3 (Plaintiffs "fail to plead reliance with any particularity"); *see also Lusson v. Apple*,
26  2016 WL 10932723, at \*2 (N.D. Cal. June 20, 2016) (Chhabria, J.) ("the complaint doesn't seem
    to allege that the plaintiff relied on those statements at all, except in the most conclusory terms.").
27  Plaintiffs cite *Moore*'s discussion of whether "[t]he misrepresentation of prescription pet food as
    medicine or FDA-controlled" was material and raised an inference of reliance (Opp. 12-13), but
28  in *Moore* the plaintiffs identified the statements they relied on.  *See Moore v. Mars Inc.*, 966 F.3d
    1007, 1013 (9th Cir. 2020).

REPLY ISO DEF.'S MOTION TO DISMISS;
                                                    NO. 3:22-CV-04305-VC

1  responsible for *forward* compatibility with new Windows 11 requirements or responsible for

2  providing a hardware TPM *separate* from the CPU itself.  These fundamental issues break the

3  causal chain and preclude AMD's liability for any alleged "injury" resulting from AMD's

4  optional fTPM.  Mot. 12-14; *see also Stoot v. City of Everett*, 582 F.3d 910, 926 (9th Cir. 2009);

5  *Stewart v. Electrolux*, 2018 WL 1784273, at *5 (E.D. Cal. Apr. 13, 2018) ("Plaintiffs must

6  demonstrate the misrepresentation or omission was an immediate cause of the injury-causing

7  conduct.") (internal quotations omitted)); *Emp. Teamsters-Local v. Bristol Myers*, 969 F. Supp.

8  2d 463, 472 (S.D. W. Va. 2013) (dismissing unjust enrichment claim "for failure to sufficiently

9  plead proximate causation"; allegations were "riddled with too many intervening events")

10  Plaintiffs' only response is to accuse AMD of "recast[ing] the defect as an incompatibility

11  with Windows 11 or the failure to provide an external hardware TPM."  Opp. 11.  With respect,

12  Plaintiffs are playing semantic games—whether framed as the placement of a TPM *on* the CPU or

13  as the failure to provide a hardware TPM *separate* from the CPU, the alleged "defect" is the

14  same: fTPM is not physically separate from AMD's CPU.  SAC ¶¶ 28 (AMD "implemented what

15  should have been—by definition—a segregated hardware module in the CPU's firmware"), 161

16  ("TPMs were designed to stand apart from the CPU").  Again, motherboard manufacturers and

17  PC builders, ***not AMD***, decide whether to equip a PC with a separate TPM chip.

18  Instead, Plaintiffs claim they have pled causation by alleging (1) "had the omitted

19  information been disclosed" they would have "behaved differently" (as to the Fraud Claims), and

20  (2) AMD's CPUs were defectively designed and they overpaid for them (as to the quasi-

21  contract/unjust enrichment claims).  Opp. 3-4, 10.  But those arguments are inapposite—Plaintiffs

22  did not rely on any statement by AMD about fTPM (so cannot allege they believed AMD's fTPM

23  was a discrete TPM), and the "defective design" they cite (which would have made them "behave

24  differently") is, again, the "failure" to provide a separate TPM that AMD *by definition* cannot put

25  on its CPU chip (or the "failure" to ensure future compatibility with new software that would not

26  be released until *years* after purchase).  These critical flaws in Plaintiffs' theory of causation are

27  fatal to their claims.  *Stewart*, 2018 WL 1784273, at *5; *Emp. Teamsters-Local*, 969 F. Supp. 2d

28  at 472.

REPLY ISO DEF.'S MOTION TO DISMISS;
NO. 3:22-CV-04305-VC

1

     **C.**     **California Law Does Not Apply to Plaintiffs' Claims**

2

     Next, Plaintiffs argue California law should apply to their claims based on a handful of

3

generic allegations that AMD is headquartered in California.  Opp. 14-15 (citing SAC ¶¶ 48-53).

4

Again, these are the same kinds of allegations the Ninth Circuit rejected in *Mazza v. Am. Honda*,

5

666 F.3d 581, 593-94 (9th Cir. 2012).  As in *Mazza*, Plaintiffs here do not reside in California and

6

do not allege they bought,[7] were exposed to advertising, or experienced alleged defects in

7

California.  *See, e.g.*, *Cover v. Windsor Surry*, 2016 WL 520991, at *7 (N.D. Cal. Feb. 10, 2016)

8

(Rhode Island law applied although design and marketing emanated from California

9

headquarters); *Sponchiado v. Apple*, 2019 WL 6117482, at *7 n.5 (N.D. Cal. Nov. 18, 2019)

10

(plaintiff did not see ads or buy product in California); *In re Carrier IQ*, 78 F. Supp. 3d 1051,

11

1075 (N.D. Cal. 2015); *Schertzer v. Bank of Am.*, 445 F. Supp. 3d 1058, 1072 (S.D. Cal. 2020).[8]

12

     Plaintiffs also argue that "the choice-of law issue is appropriately deferred to a later stage,

13

such as class certification."  Opp. 14-15.  But "the majority of courts in this district have held that

14

in a putative class action, claims arising under the laws of states in which no named plaintiff

15

resides should be dismissed for lack of standing at the motion to dismiss stage."  *Sponchiado*,

16

2019 WL 6117482, at *7 ("[d]eferring ... until the class certification stage would permit Plaintiffs

17

… to embark on lengthy nationwide discovery"); *Hindsman v. Gen. Motors*, 2018 WL 2463113,

18

at *15 (N.D. Cal. June 1, 2018) ("The majority of the courts in the Northern District … have held

19

that such claims should be dismissed for lack of standing"); *Johnson v. Nissan*, 272 F. Supp. 3d

20

1168, 1175 (N.D. Cal. 2017).

21

     **D.**     **UCL Claims Overlap with Fraud Claims and Satisfy No Test**

22

     Plaintiffs' next argument (that they have separately alleged business practices under the

23

"unfair" prong and that these allegations do not "overlap entirely with the business practices

24

addressed in the fraudulent and unlawful prongs of the UCL" (Opp. 7)) is disproven by their own

25

---

[7] Plaintiffs Day and Dobek just allege they bought their CPUs online.  SAC ¶¶ 31, 40.  The Court

26

should make the "reasonable inference" that they did so from their home states West Virginia and Illinois.  *Tidenberg v. Bidz.com*, 2009 WL 605249, at *4 (C.D. Cal. Mar. 4, 2009).

[8] The cases Plaintiffs cite are inapposite.  Half of the named plaintiffs in *In re iPhone*, 2013 WL

27

3829653, at *2-3 (N.D. Cal. July 23, 2013), were from California and defendant hosted a press conference in California showcasing the feature at issue.  In *Ehret v. Uber*, 68 F. Supp. 3d 1121,

28

1131-32 (N.D. Cal. 2014), fraudulent payments were processed through servers in California.

REPLY ISO DEF.'S MOTION TO DISMISS;
NO. 3:22-CV-04305-VC

complaint.  Plaintiffs dedicate only two conclusory sentences of their 83-page SAC to the "unfair" UCL claim and do not allege any business practices specifically under the "unfair" prong at all.  SAC ¶ 326.  This sort of generic allegation is insufficient:  "conclusory recitation of one of the UCL's legal standards does not clarify what conduct [the plaintiffs] claim is unfair, or on what allegations in the complaint [the plaintiffs] rely for this claim."  *Doe v. CVS*, 982 F.3d 1204, 1215 (9th Cir. 2020).  Indeed, the Opposition makes clear that the same allegations support both the "unfair" and "fraudulent" claims—that AMD "deceptively" designed its CPUs.[9]  And where, as here, the "business practices alleged under the unfair prong of the UCL overlap entirely with the business practices addressed in the fraudulent and unlawful prongs of the UCL, the unfair prong of the UCL cannot survive if the claims under the other two prongs of the UCL do not survive."  *Hadley v. Kellogg*, 243 F. Supp. 3d 1074, 1104-05 (N.D. Cal. 2017); *see also Punian v. Gillette*, 2016 WL 1029607, at *17 (N.D. Cal. Mar. 15, 2016); *In re Actimmune*, 2009 WL 3740648, at *14 (N.D. Cal. Nov. 6, 2009), *aff'd*, 464 F. App'x 651 (9th Cir. 2011).[10]

Plaintiffs also argue they have pled an "unfair" claim under each of the three tests articulated by the Ninth Circuit.  Regardless of which test applies, Plaintiffs' "factual allegations do not support a plausible inference that [they] w[ere] negatively impacted by Defendants' conduct" because they "received exactly what [they] paid for, at a price [they] w[ere] willing to pay," and therefore they cannot show Defendants' conduct was "unfair."  *Williamson v. Reinalt–Thomas Corp.*, 2012 WL 1438812, at *12 (N.D. Cal. Apr. 25, 2012); *Fabozzi v. StubHub*, 2012 WL 506330, at *7 (N.D. Cal. Feb. 15, 2012) ("So long as purchasers of tickets are getting exactly what they paid for… is hard to understand how such a transaction could be deemed unfair.").  Here, Plaintiffs paid for a CPU and received a CPU.  AMD's inclusion of an *optional* feature that can be disabled at will cannot be "unfair," and the Court's analysis can and should end there.  Dkt. 23-20, Ex. 17 at 12; SAC ¶¶ 174, 180-81, 183-85; Dkt. 67,1/26/2023 Hr. Tr. 5:13-17

[9] *Compare* Opp. 7 ("AMD's fTPM was deceptively designed"), *with* SAC ¶¶ 317, 337 ("AMD engaged in sophisticated methods of deception, including about highly technical matters"); 356 ("AMD intentionally designed its Affected CPUs to defraud consumers").
[10] Plaintiffs argue because their "CLRA, FAL, and fraud-by-omission claims are adequately pleaded, the 'unlawful' prong of the California UCL is satisfied."  Opp. 13 (citation omitted). Because Plaintiffs' other claims fail (*see supra* at 2-9) their UCL claim under the "unlawful" prong likewise fails.  *Hoey v. Sony*, 515 F. Supp. 2d 1099, 1106 (N.D. Cal. 2007).

REPLY ISO DEF.'S MOTION TO DISMISS; NO. 3:22-CV-04305-VC

1    ("Court: So, in this case, you can disable [the fTPM], and the CPU still works and the computer

2    functions[.] Plaintiffs' Counsel: ... your Honor, that's correct[.]")  But if the Court is inclined to

3    entertain Plaintiffs' arguments as to each of the three tests, Plaintiffs' allegations fail under each

4    of those tests as well.

5            Plaintiffs make no discernible argument as to how they could meet the requirements of the

6    tethering test, which requires that "challenged conduct is 'tethered to any underlying

7    constitutional, statutory or regulatory provision, or that it threatens an incipient violation of an

8    antitrust law, or violates the policy or spirit of an antitrust law.'"  *Doe*, 982 F.3d at 1214 (quoting

9    *Durell v. Sharp*, 183 Cal. App. 4th 1350, 1366 (2010)).  Plaintiffs allege AMD "offend[s] public

10   policy" (SAC ¶¶ 326, 347) in but do not identify a single policy that was allegedly violated or

11   how AMD's design offends that policy.  *See Doe*, 982 F.3d at 1215.

12           Next, Plaintiffs argue AMD's fTPM design is "immoral, unethical, oppressive,

13   unscrupulous or substantially injurious to consumers" because "it did not serve TPM's intended

14   purpose" and is meant "to trick operating systems into believing a real TPM to be present."  Opp.

15   7-8.  But contrary to Plaintiffs' insinuations to the contrary, TPM 2.0 and Windows 11

16   requirements explicitly condone the use of fTPM.  Dkt. 23-18 at 4.  And as Plaintiffs concede,

17   AMD's fTPM can be disabled by the user anytime—the inclusion of an optional fTPM feature is

18   a far cry from the kinds of conduct that courts have determined to be "immoral" under the

19   "unfair" test.[11]  Moreover, "failure to disclose information [defendant] had no duty to disclose…is

20   not substantially injurious, immoral, or unethical."  *Hodson v. Mars*, 891 F.3d 857, 867 (9th Cir.

21   2018).  There can be no duty to disclose what a defendant did not know and, as explained *supra* at

22   3-4, AMD did not know about any "defect" before Plaintiffs' purchases.

23           Finally, the balancing test requires Plaintiffs to show "the practice's impact on the victim

24   outweighs 'the reasons, justifications and motives of the alleged wrongdoer.'"  *Doe*, 982 F.3d at

25   1215 (citation omitted).  But here, Plaintiffs concede there are multiple simple solutions for the

26

---

27   [11] *Compare Nazemi v. Specialized*, 2022 WL 17220707, at *4 (C.D. Cal. Oct. 31, 2022) (filing of
     false tax forms was immoral), *with Bardin v. DaimlerChrysler*, 39 Cal. Rptr. 3d 634, 644 (2006)

28   (failure to disclose use of cheap steel not immoral), *and Casey v. Gen. Motors*, 2021 WL
     5417041, at *6 (S.D. Cal. Nov. 19, 2021) (defect that occurred outside warranty not immoral).

                                              8

alleged "defects"—Plaintiffs could disable fTPM, buy a CPU chip from another manufacturer, download the latest BIOS update, or buy a separate TPM chip. *See* Dkt. 23-11, 17; SAC ¶¶ 55, 57, 174, 180-81, 183-85; Dkt. 67, 1/26/2023 Hr'g Tr. at 5.

### E.   No Entitlement to Injunctive Relief or Nonrestitutionary Disgorgement

Finally, Plaintiffs argue they pled a claim for quasi-contract/unjust enrichment based on conclusory allegations that they "lack [an] adequate remedy at law." Opp. 5. But here, Plaintiffs' failure to demonstrate any entitlement to equitable relief, whether in the form of prospective injunctive relief or nonrestitutionary disgorgement, is fatal to these claims.[12]

*First*, Plaintiffs argue, even if they receive monetary damages to compensate for past harm, they still need a prospective injunctive relief in the form of repair and replacement of their CPUs to compensate for the "future harm" of being "left with stuttering and vulnerable CPUs." Opp. 6. But in consumer defect cases, "monetary damages are an adequate remedy" and courts regularly "reject the argument that injunctive relief requiring repair or replacement is appropriate." *In re MacBook Keyboard Litig.*, 2020 WL 6047253, at *3; *accord Philips v. Ford*, 2016 WL 7428810, at *25 (N.D. Cal. Dec. 22, 2016) *aff'd*, 726 F. App'x 608 (9th Cir. 2018)); *Victorino v. FCA*, 2018 WL 2455432, at *20 (S.D. Cal. June 1, 2018). For example, in *In re MacBook*, the Court rejected plaintiffs' argument that they were entitled to injunctive relief where Plaintiffs alleged they overpaid for defective laptops. *Id*. at *4. The same is true here—Plaintiffs allegedly "overpaid for Affected CPUs." SAC ¶¶ 325, 346, 354, 397, 419.

Plaintiffs' reliance on *Zeiger v. WellPet*, 526 F. Supp. 3d 652, 687 (N.D. Cal. 2021), is misplaced. Opp. 6. *Zeiger* explains injunctive relief is only arguably available to plaintiffs who can plausibly allege they "will be unable to rely on the product's advertising or labeling in the future" or they "might purchase the product in the future." 526 F. Supp. 3d at 688. This means prospective injunctions should only be awarded where products are bought with regular frequency. *See, e.g.*, *id*. (dog food); *Davidson v. Kimberly-Clark*, 889 F.3d 956, 970 (9th Cir.

---

[12] *Duttweiler v. Triumph*, 2015 WL 4941780, at *9 (N.D. Cal. Aug. 19, 2015) ("Courts routinely dismiss … claims at the pleading stage on account of the plaintiff's failure to plead facts demonstrating an entitlement to equitable relief … even where equitable relief [is pled] in the alternative[.]"); *Bird v. First Alert*, 2014 WL 7248734, at *4 (N.D. Cal. Dec. 19, 2014).

REPLY ISO DEF.'S MOTION TO DISMISS;
NO. 3:22-CV-04305-VC

2018) (flushable wipes). But Plaintiffs do not allege CPUs are bought frequently, or that they cannot rely on AMD advertising in the future. Nor can Plaintiffs simply amend—allegations of intent to repurchase have to be "more than a convenient litigating position"; there must be proof of "credible interest" in purchasing the product again. *Zeiger*, 526 F. Supp. 3d at 688; *Bird*, 2014 WL 7248734, at *5 ("a plaintiff who has no intention of purchasing a product in the future has no standing to seek prospective injunctive relief"). And here, Plaintiffs have already alleged, that had they known of the "fTPM defect," they would not have purchased at all. SAC ¶¶ 35, 46.

     ***Second***, Plaintiffs argue that they are entitled to nonrestitutionary disgorgement of the additional "profit" AMD made because it sold "defective" CPUs. Opp. 6. But Plaintiffs do not cite a single case suggesting nonrestitutionary disgorgement is an appropriate remedy in a consumer class action.[13] "Typically, the defendant's benefit and the plaintiff's loss are the same, and restitution requires the defendant to restore the plaintiff to his or her original position." *Cty. of San Bernardino v. Walsh*, 158 Cal. App. 4th 533, 542 (2007). Thus, "[i]t is only where the plaintiff's loss and defendant's gain do not match where disgorgement … would be appropriate." *Ivie v. Kraft*, 2015 WL 183910, at *2 (N.D. Cal. Jan. 14, 2015). But here, Plaintiffs' alleged loss and AMD's alleged improper "gain" are exactly the same: the improper price premium Plaintiffs paid and AMD supposedly received. SAC ¶¶ 236, 387. Nonrestitutionary disgorgement is therefore not available here. *Ivie*, 2015 WL 183910, at *2.

## III.   CONCLUSION[14]

     For the foregoing reasons, the Court should dismiss Plaintiffs' SAC with prejudice.

---

[13] Plaintiffs cite *Meister v. Mensinger* to support disgorgement. Opp. 5. But *Meister* is limited to cases involving "breach of fiduciary duty" and has no application in a consumer case like this one. *Lanovaz v. Twinings N. Am., Inc.*, 2015 WL 729705, at *2 (N.D. Cal. Feb. 19, 2015).

[14] Plaintiffs argue their CLRA claim should not be dismissed because it is not "apparent on the face of the complaint" whether Dobek's claims are outside the statute of limitations period, since the SAC does not specify when in 2019 Dobek purchased her CPU. Opp. 13-14. But "[t]he burden is on the plaintiff to allege that his or her claims fall within the applicable statute of limitations." *Hunter v. Nature's Way*, 2016 WL 4262188, at *12 (S.D. Cal. Aug. 12, 2016). Plaintiffs could easily plead the date of Dobek's purchase now, rather than needlessly deferring this issue until after discovery. Regardless, this Court should dismiss Plaintiffs' claims to the extent they purport to represent class members who bought before June 26, 2019 because a "class action cannot proceed on behalf of class members whose claims are time-barred." *Perez v. First Am.*, 2010 WL 1507012, at *2 (D. Ariz. Apr. 14, 2010) (quoting *Duprey v. Conn. Dep't of Motor Vehicles*, 191 F.R.D. 329, 340-41 (D. Conn. 2000)).

REPLY ISO DEF.'S MOTION TO DISMISS; NO. 3:22-CV-04305-VC

1

2    Dated:  May 11, 2023                        O'MELVENY & MYERS LLP

3                                                By: *Matthew D. Powers*

4                                                    Matthew D. Powers

5                                                    Attorneys for Defendant
                                                     ADVANCED MICRO DEVICES, INC.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY ISO DEF.'S MOTION TO DISMISS;
NO. 3:22-CV-04305-VC