1                UNITED STATES DISTRICT COURT

2               NORTHERN DISTRICT OF CALIFORNIA

3        Before The Honorable Vince Chhabria, District Judge

4

5   DAY, et al.,                    )
                                    )
6            Plaintiffs,            )
                                    )
7   vs.                             ) No. C 22-04305-VC
                                    )
8   ADVANCED MICRO DEVICES, INC.,   ) Related Case:
                                    ) C 22-04273-VC
9            Defendant.             )
    _____)
10
                                    San Francisco, California
11                                  Friday, November 21, 2025

12
    TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
13            RECORDING 10:16 - 10:46 = 30 MINUTES

14
    APPEARANCES:
15
    For Plaintiffs:
16
                            Bathaee Dunne, LLP
                            901 South MoPac Expressway
17                          Barton Oaks Plaza I, Suite 300
                            Austin, Texas 78746
18                    BY:   BRIAN J. DUNNE, ESQ.

19                          Hagens Berman Sobol Shapiro
                             LLP
20                          301 North Lake Avenue
                            Suite 920
21                          Pasadena, California 91101
                      BY:   CHRISTOPHER R. PITOUN, ESQ.
22

23
                 (APPEARANCES CONTINUED ON NEXT PAGE)
24

25

*Echo Reporting, Inc.*

2

```
 1  For AMD:

 2                              O'Melveny & Myers, LLP
                             Two Embarcadero Center
                             28th Floor
 3                           San Francisco, California
                                94111
 4                      BY:  MATTHEW D. POWERS, ESQ.

 5  For HP:

 6                              Crowell and Moring LLP
                             1001 Pennsylvania Ave. NW
                             Washington, DC 20004
 7                      BY:  ASTOR H.L. HEAVEN, III, ESQ.
                             ELI BERNS-ZIEVE, ESQ.
 8

 9  Transcribed by:          Echo Reporting, Inc.
                             Contracted Court Reporter/
10                           Transcriber
                             echoreporting@yahoo.com
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1  Friday, November 21, 2025                        10:16 a.m.

2                      P-R-O-C-E-E-D-I-N-G-S

3                          --oOo--

4          THE CLERK:  Now calling civil cases 22-4273,

5  Pietosi, et al. versus HP Inc., and 22-4305, Day, et al.

6  versus Advanced Micro Devices, Inc.

7      Will Counsel please state your appearances for the

8  record, starting with the Plaintiff?

9          MR. DUNNE (via Zoom):  Good morning, your Honor.

10 Brian Dunne of Bathaee Dunne LLP for the Plaintiffs, and I'm

11 joined today by Christopher Pitoun of Hagens Berman Sobol

12 and Shapiro LLP.

13         THE COURT:  Hi.

14         MR. PITOUN (via Zoom):  Good morning.

15         MR. DUNNE:  Hello.

16         MR. HEAVEN (via Zoom):  Good morning, your Honor.

17 Astor Heaven from Crowell and Moring on behalf of HP, and

18 I'm here with my colleague Eli Berns-Zieve, who's also at

19 Crowell and Moring, on behalf of HP.

20         THE COURT:  Hello.

21         MR. HEAVEN:  Hello.

22         MR. POWERS (via Zoom):  (Zoom glitch) for

23 Defendant AMD.

24         THE COURT:  Good morning.

25     Okay.  So there's a dizzying array of dates scattered

4

1  throughout your case management statement, and I was a
2  little confused by it all, but it seems like there are a
3  couple of preliminary things to talk about.  One is that the
4  motion to -- the motion to intervene or to substitute in is
5  still pending, right?  And my understanding is that's not
6  opposed, so that motion is granted.  And that means that the
7  -- the previous California Plaintiff was already out, right?
8  So now we have this new California Plaintiff in, and it's in
9  the HP case, and we need to set a schedule for adjudication
10 of potential dispositive motions as to that named Plaintiff.
11      And then the other issue, I guess, is that somebody was
12 proposing -- I can't remember who it was, but somebody was
13 proposing that the HP case trail the AMD case.  Who was
14 proposing that, and what was the thinking behind it?
15          MR. HEAVEN:  Your Honor, that was in our portion
16 of the case management statement.  The thinking was that we
17 wanted to address summary judgment for the new Plaintiff
18 prior to heading into class cert.  And we assumed that your
19 Honor would want the AMD case to move forward.  And we want
20 to move the HP case forward, but we want to make sure that,
21 you know, we're on solid ground with respect to the new
22 Plaintiff before we go to class cert, just in case it
23 affects our class cert briefing.
24          THE COURT:  Of course.  I mean, that makes sense.
25 And it seems to me the question is, just do we -- you know,

5

1  we need to make sure we're on -- everyone is -- we're on
2  solid ground as to the new Plaintiff, and the question is
3  whether we delay the AMD case and have you both go forward
4  on class cert at the same time, or whether we adopt your
5  suggestion of having the HP case trail.  I guess I'm -- I
6  don't know how much this matters, and I'm kind of thinking
7  out loud here, so take everything I say with a grain of
8  salt, but I have some -- I have some pretty serious doubts
9  about the viability of the Plaintiffs' claims in both cases,
10 right?  I mean, I think that the -- I -- my sense is that
11 from now what I've learned from the evidence that I've
12 looked at, at trial, it's going to be a real uphill battle
13 for the Plaintiffs in both cases.
14      I also am really wondering whether these cases are
15 amenable to class certification because I think that the
16 experience of the customers is potentially -- you know,
17 really could have varied.  But I think that the -- I think
18 that particularly the HP case, the Plaintiffs have some real
19 problems in the HP case, both in terms of -- you know,
20 compared to the -- I think there are problems in both cases,
21 but I think, compared to the AMD case, the Plaintiffs have
22 some real problems in the HP case, and one of them is that,
23 you know, the argument for there being a defect in the HP
24 computers is -- well, let me put it this way, the evidence
25 in support of the argument that there was a defect in the HP

6

1  laptops is significantly weaker.  And it's not even obvious
2  to me that a reasonable jury could conclude that the laptops
3  were defective.  And there's a -- you know, I -- there was a
4  footnote about that in the previous ruling that I issued.
5  And so, you know, that makes me a little extra worried about
6  delaying things in the AMD case for the purposes of
7  adjudicating summary judgment motions as to the California
8  Plaintiff in the HP case.  I -- you know, I could -- you
9  know, I'm -- I could imagine a scenario -- as I've said, I
10 could imagine a scenario where class certification is denied
11 in both cases, but I could also imagine a scenario where,
12 you know, class certification is denied in the HP case, but
13 not in the AMD case.  And I could imagine a scenario where
14 summary judgment is granted for HP in -- as to the
15 California Plaintiff.  And so maybe everything that I'm
16 saying cuts in favor of having the HP case trail the AMD
17 case.  I mean, I know I've been, like, a bit opposed to
18 that, you know, in the past, but I'm starting to wonder if
19 the HP case should trail now.
20     So what -- I don't -- we'll start with Mr. Heaven since
21 he made the proposal.  Do you have any comments about that?
22 And I'm -- then I'll hear from everybody else.
23         MR. HEAVEN:  Your Honor, I don't have any further
24 comments.  I think we agree with you -- with your
25 inclination that the HP case should trail, for the very

7

1 reasons that you said, we think there are serious issues.

2 And we think that -- we think the issues are -- you know,

3 will be different than AMD, but, at the end of the day, we

4 think that the most efficient way to do it would be for the

5 HP case to trail.  But I don't disagree with what you said.

6          THE COURT:  All right.  Mr. Dunne?

7          MR. DUNNE:  So, as Plaintiffs, our -- I mean, our

8 principal concern is that we have sufficient discovery to

9 actually run class-wide analysis needed for moving for class

10 certification, including as to class-wide damages, which,

11 under, right, the Lytle v. Nutramax standard, which

12 generally allows plaintiffs to propose an unexecuted damages

13 model for class cert, my understanding is that this is the

14 last stop before a class-wide trial.  So, right, our experts

15 would need the actual data in order to run class-wide

16 damages among other things.

17     And so -- right, I did want to just aggregate to some

18 extent the briefing deadlines versus class discovery.  If

19 your Honor really does think that our case, with respect to

20 HP, is weak on -- your footnote was directed towards the

21 standard of implied -- whether it was merchantable.  I

22 actually think that the evidence will show that we do have a

23 triable issue on that, but of course you would expect me to

24 say that, but I do believe that.

25     But, ultimately, right, if your Honor does think that

8

1  that's weaker, then maybe we go and do the summary judgment
2  or just the discovery into Mr. Ramos and then briefing on
3  that issue.  The concern that I have is that we still have a
4  sufficiently large enough time to actually get the data with
5  -- that our experts would need.  The concern that I had with
6  the schedule generally is, right, the first time or the
7  initial round of discovery, it opened in late October -- at
8  the end of October of 2023.  We served RFPs November 7th of
9  2023, and the Defendants weren't producing documents until
10 April of -- May of that year.  And that's -- discovery was
11 closing in August.  And so I just wanted to make sure that
12 there's some way to -- I don't know, to move things along,
13 if you will, such that we actually get data and documents
14 earlier on if we're not going to have a sufficiently long
15 period.  And I realize that this is somewhat conflating the
16 merits of the schedules that we gave you with the specific
17 issue with respect to HP, but, ultimately, I do think that
18 it would -- right, like, look, we're not served by doing a
19 full-blown damages analysis and giving all this discovery of
20 class-wide issues if -- you know, if indeed the Court has
21 serious doubts about the viability of merchantability.
22        THE COURT:  Well -- but the weird thing about it
23 is that we've already been through summary judgment as to
24 the other Plaintiffs in the HP case, right, where that
25 argument wasn't made.  I mean, it was sort of, you know,

9

1  thrown in in the reply brief, if I recall correctly, but it

2  wasn't properly teed up.  And so even if I did conclude as

3  to the California Plaintiff Ramos, I believe his name is --

4          MR. DUNNE:  Yes.

5          THE COURT:  -- if I concluded after, you know, you

6  all file cross motions for summary judgment, if I conclude

7  that no reasonable jury could conclude -- could find in

8  favor of Ramos on merchantability, the -- there -- then the

9  question would remain, what do we do with these other

10 Plaintiffs?  And maybe you would say -- I mean, you seem

11 like a more practical fellow than some other folks I've

12 dealt with on the Plaintiff side, but maybe you would say

13 that, at that point, we -- you want to just -- we should tee

14 that up as to the other Plaintiffs rather than go through,

15 you know, the burdensome and expensive class certification

16 discovery.  I don't know.

17         MR. DUNNE:  Well, I -- and to be clear, I want to

18 make sure that, right, I -- that I balance -- that I balance

19 practicality with zealous representation, right?  And the --

20 and, you know, ultimately trying to do what's best for a

21 putative class and our actual named Plaintiffs with respect

22 to HP products.  But, you know, the -- this -- these

23 scheduling things are practical issues.  And at the end of

24 the day, right, you know, I do think that Plaintiffs are

25 served by attorneys who think about hard choices where you

1  have, you know, line-drawing issues.  But in any event, it -

2  - to get back down to brass tacks, as I'm thinking about

3  this, right, I do think there's probably some efficiency

4  that could be gained by having class-wide discovery efforts

5  overlap each other.  We're like -- we're going to have the

6  same experts or at least overlapping experts.  We have

7  conjoint and survey people that we've been talking to.  They

8  will, as we talk to them, understand what they're -- you

9  know, they're going to say what their data needs are, and

10 there's going to be some negotiation for sure with the --

11 both Defendants.  I'm not sure that they can't run it, if

12 you will, in two separate time frames.  I --

13         THE COURT:  But, obviously, that would be -- I

14 mean, putting aside the question of whether the same

15 analysis could be run for both cases, and I don't -- I

16 haven't given any thought to that.  I don't know the answer

17 either way.  But assuming these same analysis could be run

18 for both cases, obviously, it would be a lot more expensive

19 and inefficient to do it twice.

20         MR. DUNNE:  That -- that's what -- as I was --

21 yes, I was thinking that.  And I do think that the -- not to

22 get too far ahead, but I do think -- I mean, including in

23 conversation with our experts -- that the analysis will have

24 some differences, but it will probably be -- you know, it

25 would be built upon largely the same -- much of the same

1  statistical underpinnings, and many of the data needs or at

2  least the data requests will, from ab initio, be from us

3  very similar, right?  We may find out that HP and AMD have

4  different data that they -- right, that they record for, you

5  know, different -- whether it's product types or whatever,

6  and then that might require some -- but, yes, I do think

7  that as a practical matter, having overlapping class

8  discovery would serve the efficiency of the -- both the

9  related classes.  I just -- right, like I -- at the same

10 time, right, we're cognizant that, you know, we would like

11 to work out the merchantability issue to the extent that

12 your Honor, you know, has serious concerns about that sooner

13 rather than later.  And to that end, we have been in repeat

14 communication with Mr. Ramos to make sure that he's ready,

15 get his computer ready, get him ready to have his documents

16 produced, his -- you know, his computer set for inspection

17 and set for a deposition, so that we can quickly adjudicate

18 his claims to move that along.  Maybe -- you know, maybe

19 that does mean pushing everything out of it.  I don't know,

20 the case -- you know, the cases have a 22 on them, and I --

21 I'm responsible as Plaintiff to making -- for making sure

22 that -- right, that this is moving along in a meaningful

23 way.  But, you know, I do think that the main concerns that

24 we have, as the Plaintiffs here from a case management

25 perspective, are drawing the -- or striking an appropriate

12

1  balance between adjudicating the Court's concerns with

2  respect to merchantability with respect to the HP computers

3  and having an efficient but -- and still meaningful --

4         THE COURT:  Well -- I mean, I -- you know, I --

5  I'm just spit-balling, so I -- you know, I'm just throwing

6  out different ideas as they're popping into my mind and --

7         MR. DUNNE:  Right.

8         THE COURT:  -- and so don't assume that I'm

9  advocating for one particular approach or another.  I'm just

10 trying to talk it through.  But one -- I suppose one option

11 could be to do summary judgment on -- to hold off on class

12 discovery in both cases, do summary judgment on Ramos, allow

13 -- and, obviously, if you objected to it, I would want to,

14 you know, seriously take very seriously any objection you

15 had to it, but allow HP to move for summary judgment on

16 merchantability as to all the Plaintiffs -- all the

17 individual Plaintiffs, decide that question.  And then if

18 the case is gone, then -- if the HP case is gone, then you

19 know what you're -- either way, you know what you're dealing

20 with when it comes to class certification.  You either are

21 dealing with trying to certify a class in both cases or

22 you're trying to certify a class in the AMD case.

23        MR. DUNNE:  So I -- I'm not a huge fan of the

24 thought of having to do two rounds of summary judgment with

25 respect to the same Plaintiffs against the same Defendant.

13

1  I think that there are reasons that litigants don't get a
2  second bite at the apple, particularly defendants on summary
3  judgment.  And so I -- and I think I would just be duty-
4  bound to have some sort of objection to that.  And so I --
5  that's not something that I can agree with right here.  I do
6  think that we're -- right, and I -- look, what's going to
7  happen, I think practically, is that we are going to have
8  Mr. Ramos' claims adjudicated on the merits, including with
9  respect to merchantability.  And that will not be an
10 advisory opinion with respect to Mr. Ramos.  It will be an
11 extremely strong advisory opinion at worst with respect to
12 the other Plaintiffs, especially as we go into, right, the
13 possibility of a trial.  And so while I would not -- while I
14 would not -- and I don't -- I just -- I can't agree to it
15 without thinking through it further, another round of
16 summary judgment with respect to the existing Plaintiffs, I
17 -- right, like, I do think that the Court's concerns are --
18 or I guess the statements are practical and sensible with
19 respect to ordering of things with respect to the HP people.
20 I do -- as it -- so, specifically, with -- holding off on,
21 if you will, on the entire case until summary judgment as to
22 Mr. Ramos is adjudicated.
23           THE COURT:  I mean, how long would that take --
24           MR. DUNNE:  Right.
25           THE COURT:  -- right?  Because -- I mean, all the

14

1  discovery has been done on the -- I mean, the fraud claims

2  are gone, right, as to HP --

3          MR. DUNNE:  Right.

4          THE COURT:  -- the -- all of the discovery on

5  merchantability has been done except as it relates

6  individually to Ramos' computer, right?  How long is it

7  really going to take to tee up cross motions for summary

8  judgment as to Ramos?  And then even if we did add the other

9  Plaintiffs on the question of merchantability, you know, how

10 long would that -- that's not a -- that's just a question of

11 filing a brief.  I mean, that's not -- you know, there's no

12 further discovery that would need to be done, right?  And I

13 know you would oppose it, and maybe it would be wrong to

14 allow it, but, just hypothetically, it shouldn't take that

15 much time, should it?

16         MR. DUNNE:  Well -- so I don't know Mr. Ramos'

17 availability right now for a deposition over the next --

18 well, it's starting to get into holiday season, but, yes, we

19 will make him available as soon as we can.  I mean, there's

20 practical concern.

21         THE COURT:  So he better make himself very --

22         MR. DUNNE:  Oh --

23         THE COURT:  -- available, given the history and

24 the fact that this other -- the other Plaintiff wasn't, you

25 know, responsive, I mean he better -- he better be ready to

15

 1  sprint to the finish line.

 2          MR. DUNNE:  I apologize.  I didn't mean to

 3  interrupt.  But, yes, he -- he is ready to sprint.  I -- my

 4  main thing was saying that, right, like, specific days start

 5  to, you know, become issues as we approach Thanksgiving.

 6          THE COURT:  Sure.

 7          MR. DUNNE:  But, look, I mean, what you said, I

 8  think the main thing in our minds would be, you know, how

 9  long of a delay and -- or how long of a period, right?  I

10  mean, delay itself is a loaded word.  But, yeah, I don't

11  think anything beyond -- well, it's generally Mr. Heaven's

12  and HP's discovery that they want, but, you know,

13  ultimately, I think it's just an inspection of the computer.

14  We have been talking to the Plaintiff about getting his

15  documents, which we will produce, and HP needs to look at

16  those, and then depose him, and I -- sorry, I didn't mean to

17  speak for you, Astor.

18          MR. HEAVEN:  I think --

19          THE COURT:  But let me hear also from Mr. Powers

20  on all of this.

21          MR. POWERS:  I don't think I really have a dog in

22  this fight, your Honor.  I mean, if the Court -- it does

23  make sense, I think, to get summary judgment resolved in the

24  HP case.  I do think there would probably be efficiencies

25  for the -- for everyone if both cases are going forward to

16

1   do class discovery at the same time, but you -- it's up to

2   the Court.  You know, our case is going to go forward to

3   class cert, and so, you know, if we want to pause the case

4   for two months so they can adjudicate summary judgment, that

5   would make sense.  I think it -- like, to your point, it

6   really depends how -- if we're talking six months, that's a

7   long time.  But if we're talking something much shorter,

8   then --

9              THE COURT:  Yeah.

10             MR. POWERS:  -- there would be efficiencies to be

11  gained if HP goes forward, so --

12             THE COURT:  And you all know how much I hate

13  delaying things, but I also don't want -- I mean, especially

14  in a case like this, I don't -- I -- you know, I don't want

15  the parties to be spending, you know, a ton of money that

16  they don't need to be spending on, you know, complicated

17  class certification discovery issues.  I mean, I know the

18  parties have a lot of money, but I would rather see it go to

19  something --

20             MR. POWERS:  (Indiscernible) my client money, I'm

21  happy.

22             THE COURT:  -- as opposed to -- as opposed to

23  paying you.

24      Mr. Heaven, what do you want to say?

25             MR. HEAVEN:  I was going to say, your Honor, I

17

think our main concern is making sure we have an adequate
summary judgment period.  I mean, just -- I think it's in
line with what your Honor is thinking.  And we think that if
in fact, you know, your Honor was -- you know, if it came to
the point where your Honor was inclined to grant us summary
judgment as it pertains to Mr. Ramos and it's applicable to
the other Plaintiffs, we want the opportunity to obviously
make that argument.  But whether this case trails AMD or
not, we thought -- that was our -- that was our suggestion.
If in fact your Honor wanted the AMD case to move forward,
our main concern is making sure we have an adequate
opportunity to depose Mr. Ramos, to get his interrogatories,
get his documents, and then pursue discovery and summary
judgment.  So whether it trails or not, it's -- I don't
think that's a huge concern of ours, but we just want the
opportunity for a summary judgment.

          THE COURT:  Okay.  And, Mr. Dunne, you look like
you want to say something before --

          MR. DUNNE:  So -- yeah.  Well -- so I -- I mean, I
think what Mr. Heaven and Mr. Powers said are both, you
know, sensible positions.  Something that came to my mind as
-- during that period where I didn't have to talk was,
perhaps one practical thing that we could do, if we are
essentially, you know, putting a pause for a bit on the AMD
case is, Plaintiffs could prepare and send over, I don't

18

1 know -- maybe it's -- they call it service, but with like a

2 -- of our RFPs, and maybe we could start some negotiation of

3 things or something like -- they can do their objections, we

4 could start litigating that stuff, or we could simply just

5 send over the RFPs, right?  So that --

6          THE COURT:  You mean relating to class

7 certification?

8          MR. DUNNE:  Yes, right?  So that we can start

9 getting the process of them under -- or of maybe negotiating

10 custodian --

11          THE COURT:  So they -- you at least, like, know --

12 they at least know what you want and can start thinking

13 about --

14          MR. DUNNE:  Right.

15          THE COURT:  Yeah.  I mean, I don't have any

16 problem with that.  That all sounds fine.  But I think what

17 we're going to do for now is, you know, I think you can

18 serve your class certification discovery requests, whatever

19 they are, and I think it's a good idea for them to sort of

20 start preparing.  I'm not going to require them to respond

21 to any of the class certification discovery requests until

22 after we adjudicate this motion as to Ramos.  And let's set

23 a schedule for that.  When -- does it sound reasonable to

24 have a summary -- a hearing on cross motions for summary

25 judgment in March, like late?

1          MR. DUNNE:  Without looking at specific dates,

2   yes, to me, I think --

3          THE COURT:  Late March, like March 26th?

4          MR. HEAVEN:  I think we would want it.

5          THE COURT:  And then you all can stipulate to a

6   schedule, sort of working back from that date.

7          MR. HEAVEN:  Your Honor, I think we would -- I

8   mean, I think in our proposal we proposed and -- but,

9   obviously, we'll do what your Honor wants to do, but, I

10  mean, we want a sufficient discovery time period, you know,

11  with the holidays coming up.  And I -- you know, we can make

12  it work, but I would -- I think we would ask for a little

13  bit more time to file our initial summary judgment motion.

14         THE COURT:  Let's do a hearing on -- the hearing

15  on -- I don't know if it'll be -- it's not even going to be

16  cross motions for summary judgment, right?  It's just going

17  to be -- it's just going to be HP's motion for summary

18  judgment.

19      Let's do a hearing on -- well, let's set the hearing

20  for April 2nd.  And on the -- and that'll be the, you know,

21  HP summary judgment motion as to Ramos.

22      And on the question of whether, you know, there is an

23  opportunity to adjudicate, you know, summary judgment motion

24  as to merchantability as to the other Plaintiffs, what I'll

25  propose is that, you know, if HP would like to seek

20

1  permission to include that in this motion, you can file a --

2  an -- you know, an administrative motion under the Local

3  Rules seeking permission for that, and, of course, the

4  Plaintiffs will have an opportunity to respond, and I'll

5  give it more careful thought, because, like I said, it was

6  just something that kind of popped into my mind this

7  morning, and everybody should have an opportunity to think

8  about it and weigh in on it.

9       MR. HEAVEN:  So to be clear, your Honor, we should

10  negotiate with Plaintiff on a schedule for briefing --

11       THE COURT:  That will get us --

12       MR. HEAVEN:  -- (indiscernible) April 2nd.

13       THE COURT:  That will get us to the April 2nd

14  hearing, yeah.

15     Okay.  So that's what we'll do.  Anything else we can

16  do for you right now?  I know there was some discussion of

17  maybe wanting a referral to a magistrate judge for a

18  settlement conference or something like that.

19       MR. DUNNE:  There was a discussion of ADR.

20  There's an ADR deadline.  I think we had elected private

21  mediation.  Ultimately, I think the --

22       THE COURT:  Oh, okay.

23       MR. DUNNE:  -- HP mediation is probably unripe at

24  this point.  I mean, unless they're willing to mediate, we -

25  - and --

21

1          THE COURT:  Yeah.  And the way I feel about that

2    is, I don't like to force people to go to mediation if they

3    don't want to go.  I don't see any reason to.  Candidly -- I

4    mean, I've sort of signaled to you what I think about the

5    case and your prospects even in front of a jury.  I

6    understand why the Defendants might not want to go to

7    mediation and might just want to try this case, but I'm --

8    you know, so I -- you know, but I'm very happy to provide

9    any assistance that I can provide on the settlement front.

10   If you want to -- if you want a settlement conference with a

11   magistrate judge and see if a different judge has a

12   different view of your prospects, if you think that would be

13   helpful, I'm happy to refer you for that, or not do

14   anything.  It's a -- it's kind of up to you guys.

15          MR. HEAVEN:  From my perspective --

16       Oh, go ahead, Brian.

17          MR. DUNNE:  I -- like, I -- well, I can guess what

18   Mr. Powers is going to say, but I -- right, I think that

19   probably, right now, we don't need any judicial --

20          MR. POWERS:  I think --

21          MR. DUNNE:  -- (indiscernible).

22          MR. POWERS:  -- yeah, I think, from our

23   perspective, the time to do that would be after class cert.

24          THE COURT:  Okay.

25          MR. HEAVEN:  We (indiscernible) as well.

22

1          THE COURT:  All right.  Sounds good.

2     Anything else we can do for you right now?

3          MR. HEAVEN:  No.  Thank you, your Honor.

4          MR. POWERS:  Thank you, your Honor.

5          MR. DUNNE:  No.  That's it.  Always a pleasure to

6  see everyone.

7          THE COURT:  Thank you.

8          MR. DUNNE:  Have a good day.

9          MR. HEAVEN:  Thank you.  Bye-bye.

10          THE COURT:  Wish I could say the same.

11     (Proceedings adjourned at 10:46 a.m.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

23

CERTIFICATE OF TRANSCRIBER

I certify that the foregoing is a true and correct
transcript, to the best of my ability, of the above pages of
the official electronic sound recording provided to me by
the U.S. District Court, Northern District of California, of
the proceedings taken on the date and time previously stated
in the above matter.

I further certify that I am neither counsel for,
related to, nor employed by any of the parties to the action
in which this hearing was taken; and, further, that I am not
financially nor otherwise interested in the outcome of the
action.

Echo Reporting, Inc., Transcriber

Monday, December 1, 2025